HORATIO N. ERSKINE, PLAINTIFF IN ERROR, V. ISAAC
E. JOHNSON, DEFENDANT IN ERROR.

1. **Building Contract:** CONDITIONS: WAIVER. A provision
in a building contract, that "no new work of any description
done on the premises, nor any work of any kind whatsoever,
shall be considered as extra unless expressly contracted for in
writing before its commencement," will not preclude the parties
from afterwards waiving the same, and making changes in the
original contract by parol.

2. ———: PLANS AND SPECIFICATIONS: MISTAKES: ALTERA-
TIONS. Where a contract is entered into between an owner and
contractor for the erection of a dwelling-house according to cer-
tain plans and specifications prepared by an architect named,
the work to be under the supervision and control of such archi-
tect and performed to his satisfaction, and it is found that a
mistake has been made in the plans and specifications, by reason
of which changes are necessary at an increased expense, and are
made by the direction of such architect in order to enable the
contractor to complete his contract, the owner will be liable to
such contractor for the extra cost, although probably as between
the owner and the architect the latter will be liable.

3. ———: ———: DAMAGES FOR DELAY. Where a party entered
into a contract with a contractor for the erection of a dwelling-
house for a son-in-law of the former, the work to be completed by
a day named, and there was testimony tending to show that such
party had assured the contractor while the work was being per-
formed that "no damages if it is not done according to the time
specified," and there was no proof that the son-in-law wished
to occupy the dwelling before the time of its completion, *Held*,
That a jury was justified in returning no damages for the
delay.

ERROR to the district court for Lancaster county. Tried
below before CHAPMAN, J.

*Sawyer & Snell*, for plaintiff in error, cited: *Abbott v.
Gatch*, 13 Md., 314.  *Miller v. McCaffrey*, 9 Penn. State,
245.  *Trustees v. Platt*, 5 Brad., 567.  *Ruff v Rinaldo*, 55

N. Y., 664. *McConey v. Wallace*, 22 Mo. App., 377.
2 Sutherland Damages, 490. *Dermott v. Jones*, 2 Wall., 1.

*J. L. Caldwell*, for defendant in error, cited: *Escott v. White*, 10 Bush., 169. *Morrisey v. Schindler*, 18 Neb., 672. *Clarke v. Pope*, 70 Ill., 128. *Lovelock v. King*, 1 M. & R., 60. *Goldsmith v. Hand*, 26 Ohio State, 101.

MAXWELL, J.

Johnson brought an action against Erskine to recover the sum of $46.48 balance on a contract for the erection of a frame dwelling-house; $5.00 for extra work in grading around said house; and for altering a cellar window and one bay-window, $9.00.

Erskine in his answer admits that there is due the plaintiff on the contract the sum of $45.82. As a counterclaim Erskine alleges that Johnson was to complete the building on the 1st day of January, 1886, but that he failed to do so until the middle of March of that year, to Erskine's damage in the sum of $62.60. Second, that the painting of the house was not done in good and workmanlike manner, whereby Erskine sustained damages in the sum of $15.

On the trial of the cause the jury returned a verdict in favor of Johnson for the sum of $52.48, and a motion for a new trial having been overruled, judgment was entered on the verdict.

A copy of the contract is set out in the bill of exceptions, from which it appears that Johnson was to erect the cottage on a specified lot in the city of Lincoln, and to furnish all the materials and finish and deliver in true, perfect, and thoroughly workmanlil e manner for the said Erskine, for which he was to receive the sum of $1,410, payments were to be made on estimates every fourteen days, twenty per cent to be retained until the completion of the work, and the work to be performed "agreeably to the plans, draw-

ings, and specifications prepared" by an architect named, to the satisfaction and under the direction and personal supervision of said architect; the contract also contained the following provision : "No new work of any description done on the premises, nor any work of any kind whatsoever, shall `be considered as extra unless expressly contracted for in writing, before its commencement. The proprietor will not, in any manner, be answerable or accountable for any loss or damage that shall or may happen to the said works, or any part or parts thereof respectively, or for any of the materials or other things used and employed in finishing and completing the said works; or for any injury to any person or persons, either workmen or the public, or for damage to adjoining property; from any cause which might have been prevented by the contractor, or his workmen, or any one employed by him. Where there are different contractors employed on the works each shall be responsible to the other for all damage done, to persons and property, or for loss caused by neglect, by failure to finish work at proper time, or from any other cause, and the proprietor shall not be liable therefor. For any loss of the contractor by fire the owner will not under any circumstances be answerable or accountable."

The testimony of Johnson in regard to the grading is as follows:

Q. What did this extra work consist of?

A. Grading higher, about nine inches higher, one course of stones higher.

Q. Then it was grading up near his house, was it?

A. Yes, sir, and sloping off so as to give it a gradual descent.

Q. How much do you say it was necessary for this extra work to be done?

A. It was necessary to give it a slope from the house to draw the water from the house, otherwise the water would have drawed to the house instead of from it.

Q.   Was not you to do the grading by the house according to the contract?

A.   I was.

Q.   What rendered it necessary to do this extra grading to raise it up?

A.   Simply because the architect made a mistake in drawing his grade line, after the building was up the grade line came too low; he was mistaken in regard to the raise of the ground back.

Q.   How was it Mr. Erskine told you to do this, state that conversation?

A.   I spoke to Mr. Erskine about it and told him about it.

Q.   Was there anybody present?

A.   I don't know that there was, I am not positive that there was anybody present.

Q.   What did you say?

A.   I stated to him where that grade line was and showed it to him; I said I thought it was proper to raise that grade right up, and in the conversation I told him that it would be worth probably $5.00 extra work to grade that up.

Q.   What did he say?

A.   He said go ahead and do it.

In this he is corroborated to some extent by Mr. Jenkins, the son-in-law of Mr. Erskine, but the testimony is denied by the latter. In our view, however, the jury was warranted in finding that the authority was given. Considerable stress is laid by the attorneys of Erskine upon that portion of the written contract which provides that, "No work of any kind shall be considered as extra unless expressly contracted for in writing before its commencement." This provision may be waived by the parties by any contract, either verbal or written, subsequently made, which modified its condition.

The testimony as to the extra charge for the bay-window

shows that the plans and specifications were incorrect, and that the extra work was necessary in order to construct the window, and that the changes were made by the express direction of the architect. There is no claim that the charge for the alteration is in excess of what it should be, but Erskine relies upon the provision in his contract that he shall not be liable unless he enters into a contract in writing to that effect. As between the architect and him, no doubt the architect would be liable for any mistake in the plans and specifications which increased the cost of the building, but as between the architect, who has the sole supervision of the work, and the contractor, the architect will be so far the agent of the owner as to bind him for alterations made necessary by the mistake of such architect, in order to complete the building according to contract, as where the plans and specifications called for windows which are too large, or too small, whereby loss is occasioned to the contractor ; therefore as between the contractor and the owner in such case the owner would be liable.

The raising of the cellar windows became necessary from the change in the grade, and there is testimony tending to show that Mr. Erskine gave his assent to raising the same. The items of counter-claim of Erskine, are, first, for rent, from the failure to complete the building by January 1st. The testimony of two of the witnesses shows that they commenced plastering the house about the middle of December, 1885; that the weather set in very cold and there was danger of the plaster freezing ; that there were no flues in some of the rooms, so that stoves could not be used therein to dry the walls, and that the architect directed them to cease plastering until the weather became mild, and that in consequence thereof they did desist until warmer weather set in, when they completed the work. This is denied by the architect.

Mary Johnson, the wife of Isaac Johnson, was called as a witness and testified as follows :

Q.    Are you acquainted with the defendant?

A.    Yes, sir.

Q.    Have you ever seen him at your house?

A.    Yes, sir.

Q.    About what time?

A.    He was at our house a Sabbath day when Mr. Johnson was working on the Erskine house.

Q.    About what time?

A.    In the afternoon.

Q.    What month?

A.    I can't say.

Q.    Was that about the time of the completion of this house?

A.    It was while he was working on it, somewhere near the time.

Q.    State what conversation took place between you?

A.    We were building a house at the same time, and I said to Mr. Erskine that we were slow getting our work done, that Mr. Johnson was urging his work, trying to get it done according to the time in the specification.    Mr. Erskine remarked, he said, no damages if it is not done according to the time specified.

The testimony also shows that at the time the contract was entered into Mr. Erskine expressed a willingness to give the contractor another month in which to complete the building.    This testimony is not denied.    The house in question was not constructed for renting, but for a son-in-law of Mr. Erskine, and there is no proof whatever that the son-in-law and his wife desired to occupy it before the 17th of March, 1886. , It is evident that the attempt to charge rent for the use of the house was an after-thought, and not within the contemplation of the parties when the contract was made.    The damage sustained by Erskine from the defective painting is shown to be $15, and this the jury evidently allowed.    Upon the whole case the verdict responds to the testimony, and it is unnecessary to

consider the instructions.   The judgment of the district court is clearly right, and is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.