[Civ. No. 18625. First Dist., Div. Two. Feb. 25, 1960.]

HOWARD J. WHITE, INC. (a Corporation), Respondent, v. VARIAN ASSOCIATES (a Corporation), Appellant.

Leonard & Dole and Pillsbury & Dunlap for Appellant.

Crist, Peters & Donegan, Crist, Peters, Donegan & Brenner, John M. Brenner and Hancock, Elkington & Rothert for Respondent.

DOOLING, J. — Defendant Varian Associates (hereafter called Varian) appeals from a judgment in favor of plaintiff Howard J. White, Inc. (hereafter called White) in the amount of $128,086.36.

The litigation grows out of a construction contract entered into by White and Varian on October 12, 1956, whereby White agreed to construct a vacuum tube production facility for Varian on land leased from Stanford University. The agreed price for the work was $1,347,139 and White agreed to complete it within 240 days after commencement, time being expressly made of the essence.

The contract gave Varian the right to change the specifications by written order and provided that any extension of time necessitated by reason of any such change should be requested by the contractor and adjusted at the time of ordering such change. (Art. 15, General Conditions.) The contract also provided for extensions of time in the event of delay for enumerated causes, claim therefor to be made in writing to the architect, with provision that no such extension should be granted for delay occurring more than seven days before claim therefor is made in writing. (Art. 18, *id.*) The architect testified that claims for extensions necessitated by change orders were subject of negotiation between the contracting parties under article 15 with which he had no concern, his power under article 18 being limited to delays for other causes. On appeal the parties do not dispute this interpretation.

It is agreed that work commenced under the contract on October 15, 1956. During the progress of the work 26 change orders were issued, the first 18 being signed before June 29, 1957. Of these, two extended the time of completion for 24½ days, and one shortened the time by agreement of the parties by 7 days, in consideration of Varian paying White $3,420. The parties are likewise agreed that the net extension of 17½ days embodied in these three written change orders extended the date of completion to June 29, 1957. No extension of time was otherwise granted in writing by change order or order of the architect.

The evidence makes clear that while article 15 of the General Conditions provides that "except in an emergency endangering life or property, no extra work or change shall be made unless in pursuance of a written order," the contracting parties throughout the work disregarded this provision consistently so that White on the oral direction of Varian commenced work different from or in addition to that specified in the contract and at times even completed such work before the written change order was executed.

With this background the evidence shows that on June 18, 1957, White received oral instructions from Varian to do certain additional electrical work not called for by the original contract at a cost of $18,321.23 and to do certain other work at a cost of $14,891.46. White testified that a portion of this work would take 100 man-weeks to complete, and another portion would require 60 days. Pursuant to the oral direction of June 18 White forthwith commenced the execution of this additional work. This work was afterward embodied in Change Order 19. About June 27, 1957, White received oral instructions to do other additional work, afterwards embodied in Change Order 21. This work, which White testified would take approximately 200 man-weeks to complete, was for the extension of certain process piping at a cost of $47,897.21. The work embodied in these two orders was originally planned to be done by Varian after White had completed his contract.

In the meantime, and after White had done substantial work on what was afterwards embodied in Change Order 19 the architect notified White in writing on June 25, 1957, to increase his work force and, if necessary, to work Saturdays and Sundays, to assure completion "within stipulated completion time."

On July 1, 1957, Varian sent a telegram to White's bonding company calling its attention to Varian's claim that the work was to be completed "approximately July 1, 1957 counting legal holidays" and stating its estimate that it would incur damages "in excess of $15,000 a day until substantial completion." As a result of this telegram a meeting was held on July 3, 1957, involving White, the architect and representatives of Varian. At this meeting White agreed to allow Varian access to portions of the building on July 15 and another portion by July 26. White complied with this agreement.

Varian had planned to move its equipment from a plant in San Carlos so as to be in the newly constructed building and

ready for operation there by September 3, 1957, the day after Labor Day. To minimize loss in such move Varian had scheduled the vacations of its employees in the San Carlos plant to commence on August 16, 1957, and to end on September 3, 1957 when, if the move was made as contemplated, they could commence work in the new plant. The move was actually completed and the employees did commence work in the new plant on September 3. However Varian claimed that because of White's delay in completion it was compelled to, and did, incur overtime in both the moving and the work of installing and connecting the machinery in the new plant, and for this and other items it filed a counterclaim in the sum of $126,982.89, which it now concedes should be reduced to $114,410.70.

It is agreed that the building was substantially completed on September 3, 1957, the day on which Varian commenced its business operations therein. It is also conceded that the final instalment accrued to White and unpaid under the contract is $122,071.67. The balance of the judgment awarded to White consists of certain disputed claims for extra work amounting to $6,014.69.

The trial court found among other things that work under the change orders was commenced prior to the receipt of the written change orders including the work under Change Orders 19 and 21 in reliance upon the oral authorization of Varian and concluded that by reason of this and other recited facts Varian prevented White from, and made it impossible for White to, complete performance in 257½ days or any other period prior to September 3, 1957. It further found that said acts legally excused White from performance at any time prior to September 3, 1957.

It is appellant's contention that the contract in writing required extensions in time to be in writing and that no extensions could be otherwise granted either orally or by conduct of the parties. (*Roberts* v. *Security Trust & Sav. Bank,* 196 Cal. 557 [238 P. 673]; *Suhr* v. *Metcalfe,* 33 Cal. App. 59 [164 P. 407].) We may concede that as to any change orders actually executed before June 29, 1957, the date to which completion had been extended by previous written orders, this is so.

We feel however that as to the work done under Change Orders 19 and 21 which was commenced prior to June 29, 1957, under oral authorization at a time when such addi-

tional work could not possibly have been completed by June 29, 1957, the court was justified, as it did, in applying a different rule. We must take the evidence most favorable to the court's findings and judgment, drawing every reasonable favorable inference therefrom. With this in mind the court was entitled to find that on June 18, 1957, Varian ordered White to commence substantial additional work, which it would take at least 60 days to complete, without at that time advising White that Varian expected the entire work to be completed on June 29, 1957—just 11 days later; and that it was only after White had commenced the substantial performance of this extra work that he was told that Varian expected him to complete the entire contract by June 29, 1957.

 It is settled law that the parties may by their conduct waive the requirement of a written contract that no extra work shall be done except upon written order. (*Frank T. Hickey, Inc.* v. *Los Angeles Jewish Community Council,* 128 Cal.App. 2d 676, 682-683 [276 P.2d 52] ; *Wyman* v. *Hooker,* 2 Cal.App. 36, 41 [83 P. 79] ; *cf. Collins* v. *Ramish,* 182 Cal. 360, 363 [188 P. 550].) Here the court was amply supported by the uncontradicted evidence in concluding that the parties by their previous conduct had in fact waived this requirement, so that White was justified in undertaking, as he did, the work afterwards embodied in Change Order 19, with the expectation that a later written Change Order would be executed in which his time to complete the contract would be extended to the extent reasonably made necessary by said additional work.

 After he had so undertaken this additional work he was notified for the first time that Varian expected the entire contract completed not by June 29 but by July 1. Faced with the impossibility of performance by that time White met with the architect and representatives of Varian on July 3. It is properly inferable from the oral evidence of that meeting and the correspondence which followed it that Varian insisted that White was legally bound to complete the contract on June 29 and that White insisted that his time for completion had been extended by Varian's conduct and that the parties failed to reach any agreement as to the proper date of completion; but that the parties, leaving this disputed question open, did agree that White would make the portions of the plant agreed upon available to Varian on July 15 and July 26 so that Varian could proceed with the transfer of the equipment from San Carlos and its installation in the new plant in an effort to

open therein on September 3; and that Varian's representatives stated that if this was done their damages would be greatly minimized or nonexistent.

These inferences are justified by the correspondence which followed. White wrote a letter to Varian on July 5 embodying his agreement to make the portions of the plant available on the July dates agreed upon. White added: "It was understood that although Varian Associates will commence its own work in the building before our work is completed, our obligation to finally complete the contract work will not be waived or modified in any respect." While Varian argues that this amounted to an acquiescence by White that he was bound to complete by June 29 it cannot bear that construction. Time to complete is not referred to in the quoted passage or elsewhere in the letter. On July 9 Mr. Leonard, representing Varian, replied with the assertion of Varian's claim that "the date for substantial completion under the contract has already passed" and stating Varian's desire to cooperate with White to minimize or eliminate any damage to Varian. On July 11 Mr. Rothert, representing White, in reply to Leonard's letter stated White's position: "In order to keep the record clear . . . in our conference of July 3, 1957 no determination was made of the date for substantial completion under the contract and change orders and additional work ordered by you." On July 15 Mr. Leonard replied agreeing that no determination of the date for substantial completion was made. There the matter rested.

On July 8, 1957, White received Change Order 19. It was dated July 2 and provided for "no extension of time." White wrote on the order: "Reference is made to our letter to you of July 5, 1957, regarding extension of time." Change Order 21 was dated July 30 and likewise provided for no extension. Other Change Orders, six in number dated after the July 3 meeting also provided for no extension.

It is Varian's position that the work under Change Orders 19 and 21 was given to White because it had become evident that he could not complete his contract in time and Varian decided that less time would be lost if White did the work than if Varian did it. The court was not required to believe this testimony. 1. There is no evidence that Varian made any such statement to White on or before June 18, when he was orally directed to commence the first of this work; 2. The witness Sorg, representing Varian, admitted on cross-

examination that as early as April Varian instructed the architect that it wanted White to do this extra work.

Under the circumstances the trial court was justified in concluding that by its conduct Varian had made it impossible to complete and prevented White from completing the work by June 29.

Varian insists that it was still incumbent on White to secure written extensions of time. Under the testimony accepted by both parties in the case of change orders White could only get an extension under article 15 by agreement with Varian. On July 3 Varian had made it clear that it intended to give no extension but stood on June 29 as the completion date. White therefore did all that was possible when he endorsed the reservation on Change Order 19 above quoted.

To restate the facts, the evidence supports the following conclusions: 1. By their previous conduct the parties had waived the provision that no extra work should be commenced before a written change order was executed; 2. In reliance on this waiver by previous conduct White was justified in commencing the first extra work on receiving the oral direction to do so on June 18; 3. Since this work could not be completed by June 29 White could reasonably expect an extension for the necessary time when the Change Order was in fact executed; 4. On July 3 when Varian made it clear that it would give no extension White had already changed his position by substantially embarking on the extra work afterwards embodied in Change Orders 19 and 21. It would clearly be unconscionable under the circumstances to compel White to meet a completion date within which the extra work which he had thus undertaken in reliance on Varian's conduct could not possibly be completed.

██ ''Waiver may be shown by conduct, and it may be the result of an act which, according to its natural import, is so inconsistent with the intent to enforce the right in question as to induce a reasonable belief that such right has been relinquished.'' (*Medico-Dental etc. Co.* v. *Horton & Converse*, 21 Cal.2d 411, 432 [132 P.2d 457]; *Bowman* v. *Santa Clara County*, 153 Cal.App.2d 707, 713 [315 P.2d 67]; *Huttlinger* v. *Far West Enterprises, Inc.*, 131 Cal.App. 2d 808, 811 [281 P.2d 554]; *Panno* v. *Russo*, 82 Cal.App.2d 408, 412 [186 P.2d 452]; *Bastanchury* v. *Times-Mirror Co.*, 68 Cal.App.2d 217, 240 [156 P.2d 488].)

Since Varian's counterclaim depends entirely on its contention that White did not complete in time it follows that it must fail.

The claims for extras however should not have been allowed:

1. $3,661.91 was allowed for installing extra cement in the construction of a floor slab. On Sheet S-9 of the Structural Plans the statement appears: "2d floor slab 3,000 P.S.I." On Sheet S-15 is a note: "3,750 P.S.I. concrete. Disregard specifications for strength." The architect ruled that this note modified the specification on Sheet S-9 and refused to allow an extra. White testified that the note on Sheet S-15 was a remote note which he overlooked in bidding on the job. Counsel for White cites no authority for the novel claim that the contractor may ignore any part of the specifications.

2. $2,080.40 was allowed for installing cast-iron sewer pipe instead of clay pipe called for in the specifications. An ordinance of the city of Palo Alto requires cast-iron pipe. The contract contains an express provision: "The latest Plumbing Code of the City of Palo Alto is hereby made a part of this specification for minimum requirements. . . . The Contractor shall furnish without any extra charge any additional material and labor when required by the compliance with these rules and regulations. . . ."

White clearly bound himself to comply with the Palo Alto ordinance.

3. Three additional items totaling $272.38 merit little attention. As to one of these items, two Josham roof drains, while the contractor claimed otherwise the architect testified that they were the equivalent of those specified and no more expensive; as to the second, welding certain metal sleeves to make them securely fit certain cement handrails, the architect testified that no application was made for an extra as the contract required; and as to the third, certain minor changes in a sprinkler system, the testimony is anything but clear. We conclude that the sum of $6,014.69 allowed for these extras should be stricken from the judgment.

The judgment is accordingly ordered to be reduced to the principal sum of $122,071.67 and as so reduced is affirmed; appellant to recover the cost of 3/64 of the premium paid by it for the undertaking furnished pursuant to section 942,

Code of Civil Procedure, each party to bear one-half of all other taxable costs on appeal.

Kaufman, P. J., and Draper, J., concurred.

On March 25, 1960, appellant's petition for a rehearing was denied; respondent's petition for modification of the order apportioning costs was granted and the opinion and judgment were modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied April 20, 1960.