[Civ. No. 50375. Second Dist., Div. Two. Dec. 9, 1977.]

A. J. INDUSTRIES, INC., Plaintiff and Appellant, v.
CHARLES J. VER HALEN, JR. et al., Defendants and Respondents.

## COUNSEL

Hill, Farrer & Burrill, Carl A. Stutsman, Jr., Jack R. White and Rex W. Kellough for Plaintiff and Appellant.

Marcus Crahan, Jr., Peter C. Ver Halen, Roberts, Carmack, Johnson, Poulson & Harmer and Lynn O. Poulson for Defendants and Respondents.

## OPINION

**COMPTON, J.**—On November 9, 1970, A. J. Industries, Inc. (A. J.) entered into a compromise and settlement agreement (hereafter settlement agreement) with its then president and chairman of the board Charles Ver Halen. The settlement agreement was to replace an existing employment contract between A. J. and Ver Halen. Ver Halen assigned his rights in the settlement agreement to the National State Bank (the Bank). Subsequently A. J. paid out a sum of money under the settlement agreement.

On August 30, 1971, A. J. commenced an action against Ver Halen and the Bank seeking to invalidate the settlement agreement and to recover the money paid pursuant thereto. Ver Halen and the Bank cross-complained against A. J. but Ver Halen dismissed his cross-complaint during trial.

The judgment below was in favor of Ver Halen and the Bank. A. J. was directed to pay to Ver Halen and the Bank certain sums including costs and attorney's fees. A. J. has appealed. We affirm.

Since 1956, A. J. has conducted a number of diversified business enterprises from its headquarters in Los Angeles. Ver Halen, one of A. J.'s largest stockholders, served variously as president, director and chairman of the board from 1956 until November 9, 1970.

Commencing in 1958, Ver Halen performed under the terms of an employment agreement which has amended several times, with its latest amendment effective January 1, 1970. Over the years his salary rose to $100,000 annually plus 4 percent of the net pretax profits of the corporation in excess of $125,000 per quarter. Additional emoluments and perquisites provided for in the contract included a separate office, secretarial staff, an automobile and life and medical insurance coverage.

During the spring of 1970, a struggle for control of the corporation ensued. In May 1970, at a meeting of the corporate directors, an abortive attempt was made to terminate Ver Halen's employment. Certain directors filed written complaints that Ver Halen had used the leverage of the deposit of corporate funds to obtain personal bank loans, that he had effected a loan of corporate funds to a company in which he had an undisclosed financial interest, and that he had on other specified

occasions used corporate funds for his own benefit. Ver Halen, by written response, denied any wrongdoing.

The conflict within the corporation continued unabated until November of 1970 when the dissident directors achieved their goal of Ver Halen's departure through resignation. They were aided in this by pressure from certain of A. J.'s creditors.

Recognizing, but yet uncertain of the effect of the employment agreement with its attendant benefits, the directors, acting for the corporation, entered into the settlement agreement with Ver Halen.

The settlement agreement itself recites that the corporation had grown and developed substantially under Ver Halen's leadership but notwithstanding that fact and because of the belief among certain corporate officials that his continuing to occupy a leadership role would engender disunity, it was in the best interests of the company that Ver Halen resign.

The settlement agreement contains the following recitation.

"WHEREAS, Ver Halen presently holds a binding employment contract with the Company (the 'Employment Agreement') providing, among other things, for his employment through August 8, 1978; at compensation of $100,000 per year plus 4% of the pre-tax profits of the Company to the extent such profits exceed $125,000 in any fiscal quarter; and

"WHEREAS, Ver Halen has agreed to resign as the Chairman of the Board of Directors of the Company and has agreed to resign as an employee of the Company at this time, and has agreed to relinquish the benefits accruing to him under said Employment Agreement, provided that the Company enters into the agreement set forth herein; and

"WHEREAS, the Company deems it to be in its best interests to accept Ver Halen's resignation as aforesaid and to make the payments to Ver Halen set forth herein; ..."

Finally the settlement agreement contained a release (with certain exceptions not important here) of all claims, liabilities and demands of any kind, known or unknown, which A. J. had against Ver Halen.

A. J.'s claim that the settlement agreement is invalid is grounded on the theory that at the time of executing that agreement, the employment agreement, which was thereby terminated, was in fact voidable and not binding because of Ver Halen's breach of his fiduciary duty to the corporation. The argument goes that the dereliction of Ver Halen gave rise to a legal right to terminate Ver Halen without any need to settle with him and had the directors of the corporation known of this right they would not have agreed to the settlement.

A. J. attempted to show, through the testimony of the directors, that they believed that Ver Halen had a binding employment agreement which compelled A. J. to compensate him for his resignation and that had they known of certain alleged past conduct by Ver Halen, they would not have voted for the agreement. The trial court, however, prevented A. J. from producing proof that Ver Halen was in fact guilty of the conduct that was alleged. Limited evidence on the issue was permitted as it related to the issues of mistake or lack of consideration.

Although A. J., in its briefs, does not specifically assign as a grounds for reversal the trial judge's refusal to permit detailed proof of Ver Halen's alleged misfeasance, it does assert that the trial judge had an overall misconception of the law as it relates to A. J.'s position.

This misconception, according to A. J., spawned findings of fact which are themselves either erroneous conclusions of law, are unsupported by the evidence or are deficient in their failure to address certain issues. The latter claim of deficiency lies in the judge's failure to make findings concerning the allegations that Ver Halen was guilty of certain breaches of his fiduciary duty. Because we have concluded that A. J. did not make out its case for rescission, as will be discussed *infra,* that failure was not error. In reality, A. J.'s appeal is little more than an invitation to us to reweigh the evidence.

The critical findings of the trial judge are summarized as follows: (1) The consideration for the settlement agreement was adequate and sufficient in that Ver Halen suffered substantial detriment in relinquishing his right to participate in the day-to-day management of his stock and in relinquishing life, health and other insurance benefits.

(2) Substantial benefits flowed to A. J. in quelling internal dissension among its division managers and other officers; the avoidance of litigation and the securing of waivers of defaults in its long term loans,

which defaults if not waived and which loans if called, would have rendered A. J. insolvent.

(3) The settlement agreement was not entered into in the mistaken belief that Ver Halen's employment agreement was valid, binding, or not subject to lawful termination.

(4) If there was any mistake as to whether the employment agreement was binding it was not material.

(5) Ver Halen did not make any misrepresentations in connection with the execution of the settlement agreement and he made no representation with respect to the legality of the employment agreement.

(6) A. J.'s board of directors authorized, approved and adopted the settlement agreement without regard to whether the employment agreement was legally binding;

(7) A. J. entered into the settlement agreement in order to compromise and settle disputes between itself and Ver Halen; to avoid litigation over the employment agreement; and in the belief that by doing so it would secure internal harmony within its management and greater cooperation from its long term lenders including, particularly, the waiver of then existing defaults in its long term loans.

(8) At the time it entered into the settlement agreement, A. J. had actual and constructive knowledge of substantially all facts, matters and grounds which it asserted in this litigation as cause for the termination of the employment agreement.

(9) In entering into the settlement agreement, A. J. did not rely upon any representation of Ver Halen made in connection with any asserted breach of the employment agreement or made in connection with any asserted breach of his fiduciary duties to A. J.

(10) In entering into the settlement agreement with the actual and constructive knowledge of substantially all of the facts, matters and grounds which A. J. now asserts as the basis for termination of the employment agreement and inducing Ver Halen to resign as an officer and employee thus relinquishing the benefits of the employment agreement, and by Ver Halen's performance of all of the obligations required of him under the settlement agreement, A. J. has waived and is

estopped to assert any breach of the employment agreement or breach of fiduciary duty by Ver Halen in attempting to rescind the settlement agreement.

A. J. posits that Ver Halen's denial of the charges leveled during the May 1970 meeting itself constituted a breach of his fiduciary duty as an officer of the corporation to deal fairly with the corporation—a duty which required him to disclose his wrongdoing. Thus A. J. contends that this failure to disclose permits rescission of the settlement agreement because of mistake or constructive fraud.

A. J. admits in its brief that "all the directors who voted for the settlement agreement, as well as various officers and employees of A. J., had some knowledge that charges had been made against Ver Halen, from time to time, . . . ." That admission is a slight understatement of the record. Some of the charges had been made by the directors themselves and were the subject of discussion between those directors which discussion led to the decision to attempt to secure Ver Halen's resignation. Beyond that there was pending at the time a lawsuit which had been filed by two shareholders against Ver Halen in which it was alleged that Ver Halen had taken corporate funds for personal use and had improperly used corporate personnel. The directors were well aware of that action.

To the end Ver Halen asserted his desire and right to continue in his capacity as a corporate executive. In taking that position he naturally denied that he had failed to perform properly and efficiently. He voluntarily resigned in reliance on the waivers and benefits contained in the settlement agreement.

It defies logic and strains credulity to suggest that, notwithstanding the sophistication and knowledge of the various directors and the legal resources available to them, they were misled, deceived or disarmed by Ver Halen's denials. In fact their corporate counsel advised them that the employment agreement was binding. A. J., of course, asserts that counsel was as mistaken as the directors.

Assuming arguendo that Ver Halen had conducted himself in a manner inconsistent with his duties as chief executive officer, his employment contract would have been voidable on action by the board and possibly Ver Halen would have been liable for a claim for

reimbursement of funds. A. J.'s right to void the contract and recoup any money owing to it was a right that could be waived.

Waiver is the intentional relinquishment of a known right with knowledge of the facts. (*Loughan* v. *Harger-Haldeman,* 184 Cal.App.2d 495 [7 Cal.Rptr. 581]; *Brewer* v. *Municipal Court,* 193 Cal.App.2d 510 [14 Cal.Rptr. 391].) To make out a case of waiver there must be a clear, unequivocal, and decisive act showing the party's purpose or acts amounting to an estoppel. (*Howard J. White, Inc.* v. *Varian Associates,* 178 Cal.App.2d 348 [2 Cal.Rptr. 871]; see also *First Nat. Bank of L. A.* v. *Maxwell,* 123 Cal. 360 [55 P. 980]; *Hopson* v. *Nat. Union etc. Cooks, Stewards,* 116 Cal.App.2d 320 [253 P.2d 733].)

Nowhere in the record or in the briefs is there any suggestion that the settlement agreement was the product of any collusion between Ver Halen and the members of the board that approved the agreement. Nor is there any hint that the directors were guilty of misfeasance. The settlement was negotiated at arms length. The settlement agreement was a valid waiver of any claims which A. J. might have had against Ver Halen. Having obtained Ver Halen's resignation, A. J. is now estopped to assert these claims as a basis for avoiding its obligation under the settlement agreement.

The settlement agreement on its face was clearly a contract designed to settle existing and potential disputes between the corporation and Ver Halen. True, some of the grievances which were lodged against Ver Halen, if proved, might have given A. J. more freedom of action in terminating Ver Halen but only at the expense of litigation. Obviously, because of the economic pressures that were bearing on the corporation at the time (i.e., creditors who were desirous of a change of management) the avoidance of litigation was itself an objective.

A settlement contract has the attributes of a judgment in that it serves to bar reopening of the issues settled. (*County of Los Angeles* v. *Law Bldg. Corp.,* 254 Cal.App.2d 848 [62 Cal.Rptr. 542]; *Armstrong* v. *Sacramento Valley R. Co.,* 179 Cal. 648 [178 P. 516].) Absent a fundamental defect in the agreement itself the terms are binding on the parties. A party to a settlement agreement may not seek to rescind it by proving the merits of his original claim and then establishing that an erroneous assessment by him of that claim led to the settlement.

■ What A. J. is essentially attempting to do here is to circumvent the above-stated principles by claiming that, because of his fiduciary duty to the corporation, Ver Halen should have admitted wrongdoing and rejected A. J.'s offer to settle. It must be remembered that Ver Halen did not initiate the settlement agreement. He in fact desired to remain. The impetus for the negotiations came from A. J.

A. J.'s arguments are circuitous in contending that it should be able to rescind by proving *in this action* that Ver Halen had been guilty of conduct for which he could have been terminated and that his denial of that conduct amounted to a misrepresentation which in turn led A. J. to enter into a contract under a mistaken belief that he was telling the truth. In other words, A. J. contends that it justifiably relied on Ver Halen's statement of denial of wrongdoing without any investigation on its part, while at the same time it was aware that the conduct he was denying constituted at least part of the reason for the desire to terminate him.

The claim of a defect in the agreement asserted by A. J. and in fact its entire case is necessarily premised on a theory of unilateral mistake which requires proof not only that A. J. was mistaken but that the mistake was material and was contributed to or induced by Ver Halen. (*Lawrence v. Shutt,* 269 Cal.App.2d 749 [75 Cal.Rptr. 533]; *Wood v. Kalbaugh,* 39 Cal.App.3d 926 [114 Cal.Rptr. 673].)

There is ample evidence in the record to support the trial judge's finding that A. J. did not rely on any misrepresentation by Ver Halen and that it was not laboring under any material mistake of fact or law. The evidence supports the conclusion that A. J. was fully aware of the facts concerning the alleged misconduct which could, if proven, have entitled it to a rescission of the employment agreement, but chose to ignore these past events in favor of obtaining a resignation free of litigation at a time when litigation could have had a seriously detrimental affect on the stability of the corporation.

Ver Halen made no representation concerning the settlement agreement and as to the employment agreement he did nothing more than express his intention to stand on the contract. At that point A. J.'s directors turned to their counsel who advised them that if the employment contract were unilaterally terminated litigation would surely result. About that fact there could be no mistake.

A. J. contends that the settlement agreement lacked consideration. This contention in part reasserts the previous contention that A. J. had a right to terminate the employment contract and thus Ver Halen gave up nothing to obtain the settlement and A. J. gained no benefit. As we have already pointed out the settlement agreement obviated the need to litigate that very issue and that issue cannot now be reopened.

The other consideration argument is that under the settlement agreement Ver Halen receives substantially the same money with no duties to perform as he would have received had he remained in his position.

■ Consideration consists of a benefit bestowed or a detriment suffered as bargained for by the parties. (*Blonder* v. *Gentile,* 149 Cal.App.2d 869 [309 P.2d 147].) The adequacy of consideration is tested as of the time of the making of the contract, (*Porporato* v. *Devincenzi,* 261 Cal.App.2d 670 [68 Cal.Rptr. 210]) and the courts do not weigh the quantum of the consideration as long as it has some value. (*Blocksidge* v. *Broadway Sixth Co.,* 207 Cal.App.2d 628 [24 Cal.Rptr. 622].)

■ Here there was detriment suffered by Ver Halen in relinquishing his right to participate in the corporate management and the attendant ability to control the destiny of his stock. Additionally he gave up other benefits under the employment agreement which were not compensated for by the settlement agreement, such as life and health insurance benefits.

A. J. received substantial benefits from the agreement in the quelling of dissension within the corporation, in the avoidance of litigation over the employment agreement at a time when the corporation could least afford litigation and in the securing of waivers of default from creditors which, if not obtained, would have rendered it insolvent.

A. J. got what it bargained for. On the state of the record the argument that it got only what it was entitled to, simply does not wash.

Carried to its logical conclusion, A. J.'s position in simple terms is that when the board offered Ver Halen a settlement (one which he did not seek) in exchange for his resignation (an action which he did not desire to take) his only option was to reject the settlement and resign on the grounds that his past conduct gave A. J. a right to fire him without any

settlement. To state the proposition is to demonstrate its lack of substance.

Our upholding of the validity of the settlement agreement disposes of A. J.'s major attack on the judgment in favor of the Bank. The Bank's right to recover under the settlement agreement is solidly based on a valid assignment from Ver Halen.

Finally A. J. contends that the Bank is not entitled to attorney's fees because it was not a party to the settlement agreement and, in the absence of a contractual or statutory provision therefor, attorney's fees are not recoverable by a litigant.

The settlement agreement expressly provided: "13. In the event that the Company shall fail to make any payment to Ver Halen as provided for herein, and Ver Halen commences proceedings for the enforcement thereof, Ver Halen shall be entitled to receive such reasonable attorney's fees in connection therewith as the Court in such proceedings may direct."

The assignment which was stipulated to by the parties as valid provides in part:

"Now, THEREFORE for value received, the receipt of which is hereby acknowledged, the undersigned, Ver Halen, assigns, transfers and sets over to the bank all of his right, title and interest to receive and to collect money becoming due from A. J. Industries, Inc. to him commencing March 15, 1971 pursuant to that certain Compromise and Settlement Agreement entered into between A. J. Industries, Inc. and himself on November 9, 1970.

"By such assignment Ver Halen assigns and conveys to Bank his right to all payments to be made pursuant to paragraph 3 of said agreement until such time as all presently existing or hereafter arising indebtedness of Ver Halen to the Bank has been paid in full."

Civil Code section 1084 provides in part: "The transfer of a thing transfers also all its incidents, . . . ." *Adjustment Corp.* v. *Marco,* 100 Cal.App. 338 [279 P. 1006], cited Civil Code section 1084 in holding that the right to attorney's fees was transferred from an assignor to an assignee in that the assignee stands in the shoes of the assignor and has the same rights of recovery.

The findings of the trial judge adequately cover the essential issues and are well supported by the evidence and his conclusions are in accordance with existing law. The findings and conclusions in turn support the judgment. Accordingly we are bound to affirm the trial judge's determination. (*Windeler* v. *Scheers Jewelers,* 8 Cal.App.3d 844 [88 Cal.Rptr. 39]; *Foreman & Clark Corp.* v. *Fallon,* 3 Cal.3d 875 [92 Cal.Rptr. 162, 479 P.2d 362].)

The judgment is affirmed.

Fleming, Acting P. J., and Beach, J., concurred.

A petition for a rehearing was denied January 6, 1978, and appellant's petition for a hearing by the Supreme Court was denied February 1, 1978.