**Rick D. HOGAN d/b/a/ Cheyenne Sash & Door, Appellant (Plaintiff),**

v.

**Robert W. POSTIN, Appellee (Defendant),**

**Reiman Construction Company (Defendant).**

No. 83–178.

Supreme Court of Wyoming.

Feb. 25, 1985.

*Livingston v. Jefferson*, 15 Fed.Cas. (No. 8411) 660, 663 (1811).

Carole Shotwell of Urbigkit, Whitehead, Zunker & Davidson, P.C., Cheyenne, for appellant (plaintiff).

Larry Lawton of Lawton & Edwards, Cheyenne, for appellee (defendant).

Before THOMAS,* C.J., and ROSE, ROONEY,** BROWN and CARDINE, JJ.

ROSE, Justice.

Subcontractor Rick D. Hogan, d/b/a Cheyenne Sash & Door, brought suit against Reiman Construction Company and Robert W. Postin, the contractor and architect respectively on the restoration of the historic Tivoli Building in Cheyenne. Hogan's complaint against Postin is the subject of this appeal. Hogan claimed that Postin made a measurement error in the architectural drawings of a window layout, and that as a result of this mistake Hogan incurred additional expenses of $2,413 in completing his portion of the project. The county court found in favor of Hogan, and an appeal was taken to the district court. The district court reversed the judgment against Postin on the basis of Hogan's failure to obtain a written agreement to pay for the extra work from the contractor or the owner of the building (the City of Cheyenne) as his contract required.

We will affirm.

* Became Chief Justice January 1, 1985.

** Chief Justice at time of oral arguments.

## FACTS [1]

As an agent for the City of Cheyenne, architect Postin supervised portions of the restoration of the Tivoli Building. Hogan subcontracted to do mill work and wood work under the direction of Postin.

While preparing the shop drawings for two storefronts which were to be constructed by Hogan, a discrepancy was discovered between the ceiling height as it appeared on the original blueprint and as it was measured in the field, and adjustments, therefore, had to be made in the dimensions of the windows and the sills. Hogan notified Postin of the measurement difference, and Postin instructed him to make the windows the size indicated on the blueprints. The sill height was then necessarily 39 inches instead of the 27 inches appearing on the blueprints.

Hogan built the storefronts in his shop pursuant to Postin's instructions. The day after the east storefront was installed, Hogan was notified that Postin was dissatisfied with the sill height. Upon speaking with him, Hogan learned that Postin wanted the sill height to be one foot lower (27 inches). Hogan and Postin discussed the best procedure for making the changes which were necessary for historical accuracy. Hogan said he would keep track of the time and materials required in making the changes, but no actual arrangements for payment were made. Mr. Reiman, the general contractor, agreed that the sill height was wrong and told Hogan to proceed with the alterations.

In his complaint filed in county court, Hogan sought $2,413, the total amount of the invoices on the alterations, plus interest against Reiman Construction Company and/or Postin. Civil judgment was entered against Postin for the entire amount. The district court reversed on contract theory, finding that Hogan could not claim the right to be paid by anyone, including Postin, when he had not complied with the clear requirements of his contract.[2]

## THE ISSUE

Appellant states the issue as follows: " * * * [W]hether, by virtue of a contract executed between a contractor, Reiman Construction Company, and a subcontractor * * * Appellant can recover from the supervising architect * * * monies expended because of appellee's miscalculation and error in measurement of dimensions on the appellant's worksite."

The issue is more succinctly stated as whether or not the appellee-architect owed a contractual duty to the appellant-subcontractor based on a contract to which appellee was not a party. While we agree with the outcome of the district court decision, we do not believe it is necessary to reach the question of whether or not the appellant complied with the proper procedure for securing payment for additional work. In affirming the judgment of an intermediate court, we may consider grounds not noticed or passed upon by the intermediate court. 5B C.J.S. Appeal and Error § 1815, p. 151, and cases cited therein. We have said that the trial court should be affirmed if it is correct on any theory. *Valentine v. Ormsbee Exploration Corporation*, Wyo., 665 P.2d 452 (1983); *Heyl v. Heyl*, Wyo., 518 P.2d 28 (1974); *White v. Wheatland Irrigation District*, Wyo., 413 P.2d 252 (1966). Relying on the disclosed-principal [3] concept, we

1. Any factual discrepancies have been resolved in favor of the appellant, who prevailed in the trial court. *Younglove v. Graham & Hill*, Wyo., 526 P.2d 689 (1974).

2. The subcontract agreement specifically required:
   "Seventh. No extra work or changes under this contract will be recognized or paid for, unless agreed to in writing before the work is done or the changes made; in which writing shall be specified in detail the extra work or changes desired, the price to be paid or the amount to be deducted, should said changes decrease the amount to be paid hereunder."

3. Restatement of the Law, Second, Agency 2d § 4(1) defines "disclosed principal":
   "If, at the time of a transaction conducted by an agent, the other party thereto has notice that the agent is acting for a principal and of the principal's identity, the principal is a disclosed principal."

hold that Postin owed no contractual duty to Hogan.

## THE LAW

This court adopted the disclosed-principal rule in *Thomas v. Gonzelas,* 79 Wyo. 111, 331 P.2d 832 (1958). In that case, we held that an electrician did not state a cause of action against a lessee who ordered the installation of additional electrical equipment as an agent of the lessors. We accepted the position of Restatement of the Law, Second, Agency 2d § 328:

> "'An agent, by making a contract only on behalf of a competent disclosed or partially disclosed principal whom he has power so to bind, does not thereby become liable for its nonperformance.'" 331 P.2d at 834.

Also see *Starrett v. Shepard,* Wyo., 606 P.2d 1247 (1980); *Kure v. Chevrolet Motor Division,* Wyo., 581 P.2d 603 (1978); 3 C.J.S. Agency § 365, p. 180.

■ In the case at bar, the appellant was well aware of the fact that the Tivoli Building was owned by the City of Cheyenne and that Postin was supervising the project as an agent for the City. In ordering Hogan to correct the sill heights Postin was acting on behalf of the City, and thus did not become personally liable for payment on a contract. *Thomas v. Gonzelas,* supra; Restatement of the Law, Second, Agency 2d § 328.

■ In *Thomas v. Gonzelas,* supra, this court also recognized the rule set forth in 3 C.J.S. Agency § 215 (now 3 C.J.S. Agency § 365):

> "'An agent who contracts on behalf of a disclosed principal and within the scope of his authority, in the absence of an agreement otherwise, or other circumstances showing that he has expressly or impliedly incurred or intended to incur personal responsibility, is not personally liable to the other contracting party * * *.'" 331 P.2d at 834.

Hogan does not allege that Postin expressed any intention of becoming personally responsible, although Postin did admit that the error was his fault. Absent an agreement to assume liability for nonperformance of a contract, an agent is not personally liable.

■ Appellant argues that Postin did not have the authority to bind the City to pay for his professional "mistake, error and miscalculation." We do not agree. In an early Nebraska case, a contractor was suing an owner for an unpaid balance on a contract for the construction of a house. The contract required the builder to perform

> "'* * * agreeably to the plans, drawings, and specifications prepared' by an architect named, to the satisfaction and under the direction of said architect." *Erskine v. Johnson,* 23 Neb. 261, 36 N.W. 510, 511 (1888).

The architect made a mistake in drawing the grading line which resulted in additional work for the contractor. The owner of the home attempted to avoid liability, relying on a provision in the builder's contract requiring that extra work be contracted for in writing. The Supreme Court of Nebraska held that the writing provision was modified or waived because of the directions of the architect, and said:

> "* * * As between the architect and [the owner], no doubt the architect would be liable for any mistake in the plans and specifications which increased the cost of the building; *but as between the architect, who has the sole supervision of the work, and the contractor, the architect will be so far the agent of the owner as to bind him for alterations made necessary by the mistake of such architect, in order to complete the building according to contract;* as where the plans and specifications called for windows which are too large or too small, whereby loss is occasioned to the contractor." (Emphasis added.) 36 N.W. at 512.

That holding is directly applicable to this case and leads us to conclude that Postin did have the power to "bind" the City within the meaning of Restatement of the Law, Second, Agency 2d § 328 and is, therefore,

not personally liable for the amount of the invoices as claimed by Hogan.

The position that Postin did have the authority to order the refabrication of the storefronts is also supported by the language of the only document before this court which is indicative of his authority. A provision of the subcontract agreement requires Hogan to perform his contract "* * * according to the plans and specifications * * * of Robert W. Postin, Architect, *and to the full satisfaction of said Architect.*" (Emphasis added.) The implication of this provision is that Postin could require performance meeting his standards and could require that mistakes be cured. The language of the subcontract agreement is evidence of the actual authority of Postin to bind the City of Cheyenne.

Because Postin acted as an agent for a disclosed principal, expressed no intent to assume personal liability and acted within his authority in ordering the correction of the storefronts, we hold that Postin owed no contractual duty to the appellant according to the disclosed-principal concept.

Affirmed.

ROONEY, Justice, dissenting, with whom CARDINE, Justice, joins.

As set forth in the majority opinion, the facts in this case are simple and uncomplicated. Appellee architect made a serious design mistake. Appellant told him about it, but appellee told appellant to continue with the construction including the mistake. Appellant did so. Later, appellee told appellant to redo the work for the purpose of correcting the mistake. Appellant did so and now seeks to be paid for the extra work.

I fault the majority opinion in three respects: (1) it misinterprets the nature of the cause of action; (2) it is inconsistent in its reasoning; and (3) it fails to recognize the waiver of the requirement for prior written authorization of a change.

---

**1.** The owner expected the building to be renovated into its original appearance as a historical

## NATURE OF THE CASE

The majority opinion improperly considered this action to be on a contract between the owner and contractor-subcontractor in which "change orders" were required to have prior written approval.

The owner was not made a party to this lawsuit. Appellant is not seeking payment from it. Appellant recognized that the extra work was not a result of a change in that for which the owner originally expected[1] but was a result of appellee's mistake in not directing performance to that which the owner originally expected. The owner could certainly object to payment to appellant for the mistake made by one who was being paid by the owner to not make mistakes and who was being paid to see that others involved in the project did not make mistakes. The lawsuit was for value received *by the appellee* for the extra work. This being so, neither the agency relationship between owner and appellee nor the procedure in the owner's and contractor's-subcontractor's agreement requiring written directions in a change order have any relevance to the matter. Appellee was not acting on behalf of anyone but himself when he asked appellant to redo the windows. The owner would not be asking for a "change" in the original request to reestablish the historical appearance of the building. Appellee was obligated to plan the restoration. He made a mistake in doing so. He was obligated to correct it. Only he received value from the extra work performed by appellant.

Accordingly, appellant's legal action is against appellee for value received. The "change order" provision of the contract was for the benefit of the owner. *Snowball v. Maney Bros. & Co.,* 39 Wyo. 84, 270 P. 167, 61 A.L.R. 199, reh. denied 271 P. 875 (1928); *Headley v. Cavileer,* 82 N.J. 635, 82 A. 908 (1912). It is not pertinent to this cause of action. Nor does the agency relationship between the owner and appellee have any application to the cause of

---

site. Appellee was employed as an architect to accomplish this purpose.

action against appellee for the value of services rendered by appellant to appellee for himself and not rendered to or for appellee's principal, the owner.

## INCONSISTENT REASONING

The majority opinion asserts that appellee had the power to order the refabrication and thus "bind" the city to pay appellant for appellee's mistake—subject to first presenting a change order. This assertion is founded on a principal-agent relationship between the city and appellee, which it is said relieves appellee from any responsibility for his mistake. The majority opinion buttresses this analysis by referring to language in the subcontract to which appellant was a party requiring appellant to perform "according to the plans and specifications" of appellee and to appellee's "full satisfaction."

Yet, with all of this authority in appellee, the majority opinion does not recognize that the work done to correct appellee's mistake was actually doing the work to appellee's "full satisfaction." Nor does the majority opinion recognize the inconsistency of this power to "bind" the city with the lack of power to waive the requirement for a prior written order to correct appellee's mistake. And this brings us to my third disagreement with the majority opinion.

## THE REQUIREMENT FOR PRIOR WRITTEN AUTHORIZATION FOR A CHANGE WAS WAIVED

The Nebraska case quoted by the majority opinion, *Erskine v. Johnson*, 23 Neb. 261, 36 N.W. 510 (1888), to substantiate the authority of appellee to "bind" the city in authorizing a change order, stated at 36 N.W. page 512:

"Considerable stress is laid by the attorney of Erskine upon that portion of the written contract which provides that 'no work of any kind shall be considered as extra unless expressly contracted for in writing before its commencement.' This provision may be waived by the parties by any contract, either verbal or written,

subsequently made, which modified its condition. * * *"

This is the general rule:

"The provision in a private building or construction contract (whether between a property owner and a contractor or between a general contractor and a subcontractor) that alterations or extras must be ordered in writing can be avoided by the parties to the contract where their words, acts, or conduct amount to a waiver, modification, rescission, abrogation, or abandonment of such provision, or where the owner (or the general contractor in the case of a subcontract) by his acts or conduct is estopped to rely on it. * * * *" Anno., Effect of stipulation, in private building or construction contract, that alterations or extras must be ordered in writing, 2 A.L.R.3d 620, 648 (1965).

See *Snowball v. Maney Bros. & Co.*, supra.

When appellee directed appellant to do the extra work, appellant was told to keep track of costs and expenses. Appellant had performed extra work at other times on the project without prior written approval—and he had no trouble securing payment. He testified:

"As Reiman Construction Co. asked me to perform extra work, I would invoice it. They would pay me for the invoices. Every extra that I performed up to the time of this discrepancy was paid for."

The habitual disregard of the requirement amounted to a waiver of it. *Harrington v. McCarthy*, 91 Idaho 307, 420 P.2d 790 (1966); *Howard J. White, Inc. v. Varian Associates*, 178 Cal.App.2d 348, 2 Cal.Rptr. 871 (1960); *Arc & Gas Welder Associates, Inc. v. Green Fuel Economizer Co.*, 285 F.2d 863 (4th Cir.1960), cert. denied 366 U.S. 919, 81 S.Ct. 1095, 6 L.Ed.2d 241 (1961). And, accepting the majority opinion's recognition of the authority of appellee to "bind" the city, his direction to do the work amounted to a waiver of the requirement for a written change order.

## SUMMARY

In summary, I believe the requirement for prior written authorization for the ex-

tra work was waived by prior habitual disregard of it; and if appellee had agency authority from the owner to order the refabrication, he had authority, and exercised it, to waive the requirement for prior written authorization for the extra work. But, I would reverse the case on the basis that the requirement for prior written authorization for extra work was for the benefit of the owner and that this action is against the appellee architect, not the owner, for value received from work to correct the appellee's mistake, wherefore the requirement for prior written authorization is not relevant. Equity and justice place the burden to pay for appellee's mistake upon appellee—particularly when the mistake was called to his attention at a time when it could have been corrected without extra work, and he directed the work to be done including the mistake only to later direct correction of his mistake.