**71 CONSTRUCTION, a Wyoming corporation, Appellant (Defendant),**

**v.**

**WESCO ELECTRIC, INC., a Wyoming corporation, Appellee (Plaintiff).**

**No. 96–72.**

Supreme Court of Wyoming.

Oct. 16, 1996.

Thomas F. Reese and B.J. Baker of Brown, Drew, Massey & Sullivan, Casper, for appellant.

John P. Worrall, Worland, for appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

GOLDEN, Justice.

General contractor, 71 Construction, appeals an adverse judgment for its subcontractor, Wesco Electric, Inc. (Wesco), following a bench trial in which the parties litigated which one had breached the contract. We affirm the judgment.

## ISSUES

71 Construction presents these issues for review:

1. The conclusion of the Court in the Order entered December 11, 1995 that "Plaintiff (appellee Wesco Electric, Inc.) did not breach the contract" between the

parties is contrary to the express provisions of the contract and the undisputed evidence adduced at the trial, and is erroneous because it does not reflect proper legal standards for the construction of a contract.

2. The Court's finding and conclusion in the Order dated December 11, 1995 that, "Plaintiff (appellee Wesco Electric, Inc.) should have been notified of the August start-up so they (sic.) could have been present," is contrary to the express terms of the contract. The Court cannot make a contract for the parties that they did not make themselves.

Wesco views the issue as:

1. Whether or not the trial court's interpretation of the contract between the parties was supported by the evidence presented at trial.

## FACTS

71 Construction obtained a contract with the town of Shoshoni, Wyoming, to supply a water system for the Shoshoni Water Project. By written contract, Wesco subcontracted to supply electrical and telemetry system requirements for 71 Construction on the project. Wesco subcontracted part of the work to Automation & Electronics. The water project was set in two phases requiring a start-up procedure upon completion of the first phase before the second phase could begin. The initial start-up was attempted on July 14, 1993. Wesco was notified and was present. Its own subcontractor, Automation & Electronics, was not represented although it had been notified. The pumps to put two wells on line failed to operate because of electrical problems. Wesco determined that the problems should be fixed by Automation & Electronics and the start-up was aborted.

Automation & Electronics returned to the site and made repairs; however, Wesco did not return to the job site after July 14, 1993. Wesco submitted a final bill on July 19, 1993, but contended at trial that this was done in advance of its completion of all work in order to comply with 71 Construction's billing practices. It was established at trial that, on August 2, 1993, Wesco notified 71 Construc-

tion's project manager that all work had not yet been completed. A new start-up date of August 13, 1993 was scheduled by 71 Construction, but this time no one notified Wesco. Consequently, on that date, neither Wesco nor Automation & Electronics had a representative present. Electricity had not been connected at a terminal box which would have opened a valve and the two wells flooded, causing damage which cost $9,210.66 to repair. Following its own investigation, 71 Construction unilaterally determined that Wesco was responsible for the damage and off-set Wesco's final payment by $9,137.04 to pay for the damage. Wesco sued to recover that sum. 71 Construction countered that Wesco breached the contract by failing to connect electrical wires at the terminal box. Wesco replied that 71 Construction breached the contract by failing to notify Wesco of the August 13th start-up date when it would have connected the wires. 71 Construction responded that the contract contains no such notification requirement.

Following a bench trial, the district court determined that Wesco rendered all the required services of the contract and did not breach the contract. The court determined that the August 13, 1993 start-up required Wesco's presence but it did not receive notice and was not present during this critical phase of the project. The court further determined that damage did result to the system during the August 13, 1993 start-up because Wesco was not present, but the court ruled Wesco was not negligent, and therefore, was not responsible for the damage. This appeal followed.

## DISCUSSION

71 Construction contends negligence was not an issue and that the only issue the court should have determined was whether Wesco breached the contract when its electrical work malfunctioned and it aborted the July 14th start-up, and when it failed to connect wires at the terminal box causing damage during the August 13th start-up. Wesco contends 71 Construction breached the contract when it failed to notify Wesco about the later start-up in order for Wesco to be present. The trial court concluded that:

[Wesco] rendered the necessary services under this contract. [Wesco] did not breach the contract. It completed the contracted work in a timely and efficient manner.... [Wesco] did not receive notice, nor was present during, the August 13, 1993 start-up. This was a critical phase of the project. [Wesco] should have been notified of the August start-up so they could have been present.

█ All of these factual issues were disputed. The question of breach of contract was for the trial court. *Atlas Const. Co., Inc. v. Aqua Drilling Co.*, 559 P.2d 39, 40 (Wyo. 1977). We sustain a trial court's findings and judgment on questions of fact unless they are clearly erroneous or contrary to the great weight of the evidence. In making such a determination, we examine the evidence in a light most favorable to the prevailing party, without considering evidence of the other party which conflicts. *Morris v. Staab*, 896 P.2d 773, 775 (Wyo.1995).

The subcontractor agreement required Wesco:

> To perform and coordinate his work with that of the Contractor and other sub-contractors to the best interest of the project as a whole as directed by the Contractor....

The evidence at trial from both Wesco witnesses and 71 Construction's project manager established that it was customary and necessary to have all contractors and subcontractors present at a start-up in order to perform and coordinate with each other and to prevent the type of damage which occurred in this case. Other evidence at trial established that 71 Construction intended that Wesco be present at the August 13th start-up but failed to notify it. 71 Construction's argument concedes that "Wesco's employees were required to be present and were present at the attempted start up on July 14, 1993...." It is inconsistent for 71 Construction to now argue that the trial court erred in finding that Wesco's presence was required at the August 13th start-up. The implication of this contract provision is that 71 Construction was required to notify Wesco of the August 13th start-up so that Wesco could be present. *See Hogan v. Postin*, 695 P.2d 1042, 1047 (Wyo.1985) (Rooney, J., dissenting). Furthermore, nothing in the contract required Wesco complete its work by a certain date. The evidence at trial was that Wesco did not have a completion date and the record did establish that Wesco never informed 71 Construction project engineers that its work had been completed before August 13th, and the district court so found. There was sufficient evidence to support the court's judgment and we affirm.