[No. B208335. Second Dist., Div. Eight. Aug. 17, 2009.]

THE VONS COMPANIES, INC., Plaintiff and Appellant, v.
LYLE PARKS JR., INC., Defendant and Respondent.

**COUNSEL**

Ropers, Majeski, Kohn & Bentley, James A. Lassart, Adrian G. Driscoll and Suzanne E. Rischman for Plaintiff and Appellant.

Lorber, Greenfield & Polito, Bruce W. Lorber, Steven M. Polito and David B. Roper for Defendant and Respondent.

## OPINION

BENDIX, J.[*]—

### SUMMARY

The trial court erred in refusing to award litigation costs to a litigant (The Vons Companies, Inc. (Vons)) that prevailed on two causes of action assigned to it by the original plaintiff (Mock Ranch, Inc. (Mock)) in a settlement of Mock's complaint against Vons. The trial court did not err, however, in denying Vons's motion for attorney fees under Civil Code section 1717, because the warranty on which Vons's claims were based contained no attorney fee provision.

### FACTUAL AND PROCEDURAL BACKGROUND

Vons and Lyle Parks Jr., Inc., were parties to a construction contract executed in July 2002. Lyle Parks was the contractor responsible for constructing improvements (a shopping center) on certain real property owned by Vons. In the construction contract, Lyle Parks warranted the work against defects, agreeing that if, within one year after completion of the contract, any of the work or materials were found to be defective, Lyle Parks would repair or replace the defective work or materials and all resulting damage. The construction contract contained an attorney fee clause stating that: "If either party files a suit against the other which is in any way connected with this contract, including without limitation any suit based on an alleged tort, the unsuccessful party shall pay to the prevailing party a reasonable sum for attorneys' fees, which shall be deemed to have accrued on the commencement of such action and shall be enforceable whether or not such action is prosecuted to judgment."

When the work was completed, Lyle Parks issued a separate warranty dated October 14, 2003, guaranteeing that the work which had been furnished and installed at the project had been done in accordance with the architect's specifications and that the work as installed would fulfill the requirements of the warranty. The warranty stated that Lyle Parks agreed to repair or replace any or all of its work that might prove defective in workmanship or material within a period of one year (and that if it failed to do so, the owner was authorized to have the defects repaired at Lyle Parks's expense). The October 14, 2003 warranty contained no attorney fee clause.

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

In May 2004, Vons sold the shopping center to Mock Ranch, Inc. Pursuant to the sale agreement, Vons assigned to Mock "all of its right, title and interest" in the "General Contractor's Warranty Dated October 14, 2003." Vons did not assign the construction contract to Mock. In that part of the sale agreement that listed what contracts were the subject of the assignment, the sale agreement recited "None."

In May 2006, Mock sued Vons and Lyle Parks. As to Vons, Mock's lawsuit alleged causes of action for fraud, concealment, negligent misrepresentation, breach of contract, rescission and unfair competition. Mock claimed that Vons failed to disclose water leaks and water penetration; failed to disclose the refusal by tenants of the property to return estoppel certificates; provided false and misleading financial statements for operation of the property (failing to disclose actual amounts of common area maintenance fees billed back to the tenants); and unilaterally recorded use restrictions that were contrary to the sale agreement.

As to Lyle Parks, Mock alleged causes of action for negligence and breach of warranty, asserting that Lyle Parks's below-standard workmanship resulted in water leaks and water penetrations causing structural damage, mold and other damage to the property. Mock's prayer for relief sought attorney fees, including on its two causes of action against Lyle Parks. Lyle Parks's answer to Mock's complaint also included a prayer for attorney fees.[1]

On August 28, 2007, a month or so before trial, Vons filed a cross-complaint for indemnity against Lyle Parks. In that cross-complaint, Vons sought indemnification "[i]f any judgment should be rendered in favor of [Mock] herein and against Vons as a result of [Mock's] alleged damages . . . ." Lyle Parks answered and then filed a motion for judgment on the pleadings as to the cross-complaint, pointing out that Mock's claims against Vons were based on fraud, and contending Vons could not be indemnified for its own willful misconduct and sole negligence.

On September 29, 2007, a few days before trial began, all of Mock's claims against Vons were settled. The terms of the settlement were not disclosed to the court or to Lyle Parks, but Mock and Vons notified the court that, as part of the settlement agreement, Mock's causes of action against Lyle Parks for negligence and breach of warranty were assigned to Vons. On October 3, Mock filed an application to substitute Vons in place of Mock as plaintiff on the negligence and breach of warranty causes of action, stating

---

[1] Lyle Parks's answer also included an affirmative defense alleging that "Plaintiffs, all other parties, and their insurers are liable to reimburse [Lyle Parks] for all reasonable fees and costs" pursuant to Civil Code section 1717 and Code of Civil Procedure section 1021.6 (attorney fees on claims for implied indemnity).

that the application was based on Mock's assignment to Vons of "all of [Mock's] interest in these pending claims and causes of action against Lyle Parks." The trial court granted Mock's application by written order, approved as to form by counsel for Lyle Parks, filed the same day.

On October 4, 2007, trial began on the negligence and breach of warranty claims against Lyle Parks, with Vons seeking over $2 million in damages. (To avoid confusion, the parties agreed to the court's suggestion to denominate the case "Vons versus [Lyle] Parks" in front of the jury.) Before opening arguments, Lyle Parks moved to strike Vons's cross-complaint for indemnification as moot. The trial court granted the motion, observing: "[S]ince it has been settled, there is no potential for the finding of liability as between Vons and Mock. It renders, frankly, a nullity the cross-complaint for indemnification, and accordingly, the motion will be granted." After a recess, counsel for Vons asked that the motion to strike Vons's cross-complaint be granted with leave to amend, and the court told the parties to brief that issue.

After four days of trial, the jury began deliberations. After the case was given to the jury, Vons offered authorities in support of the proposition that the court could grant a motion to strike a pleading (its cross-complaint for indemnification) with leave to amend. Because the jury had by then reached a verdict, the court said that it would take the verdict, "and then to the extent that one side or the other feels that they need to bring on some post-trial motions, whether it's for leave to amend the cross-complaint or to oppose such a motion, you can do that in the context of post-trial briefing." Counsel for both sides agreed to that procedure, but Vons never filed a motion to amend the cross-complaint.

The jury found in favor of Vons and against Lyle Parks on the claims for breach of express warranty and negligence,[2] and awarded Vons damages of $35,556. Judgment on the jury verdict was entered on March 13, 2008.

1. *The memorandum of costs.*

On March 19, 2008, Vons filed a memorandum of costs, seeking costs of $33,671.80 (of which $29,335.72 was for deposition costs). Lyle Parks moved to strike or tax costs, pointing out that Vons was the prevailing party only as to Mock's two claims against Lyle Parks: Vons was *not* the prevailing party in its defense against Mock's claims (and Mock was not the prevailing party as to its claims against Vons), all of which had been settled, and Vons was not the prevailing party on its cross-complaint against Lyle Parks (which

---

[2] During the trial, the court granted Vons's motion to amend the complaint to conform to proof, adding a cause of action for breach of implied warranty. The jury found in favor of Lyle Parks on that claim.

had been stricken). Consequently, Lyle Parks argued, Vons could only recover costs associated with its prosecution (in place of Mock) of Mock's two causes of action against Lyle Parks. Thus, for example, costs for depositions taken by Mock of Vons's agents and employees did not relate to Mock's construction defect claims against Lyle Parks; depositions taken by Vons in its defense of Mock's claims were outside the scope of any claims Mock had against Lyle Parks; and no costs incurred by Vons prior to stepping into Mock's shoes could be considered reasonably necessary to Mock's prosecution against Lyle Parks. Lyle Parks also identified filing fees that were completely unrelated to Mock's action against Lyle Parks (filing fees for Vons's answer to Mock's complaint, Vons's cross-complaint for indemnity, and Vons's notice of settlement with Mock), allegedly "inexplicable or indecipherable deposition costs," other "highly questionable and not reasonable" costs, and allegedly unreasonable and unnecessary travel costs. Lyle Parks requested the court either to strike Vons's memorandum of costs in its entirety, or to disallow $27,269.77 of the $33,671.80 being sought.

Vons opposed Lyle Parks's motion to tax costs, asserting it was entitled to recover Mock's costs as its assignee, and was also entitled to recover its own costs in full "through the cost memorandum at issue here or through an amended Cross-Complaint." As to the latter claim, Vons reasoned that it "would not have been forced to defend against allegations that it concealed defects at the property if the property had no defects," and Lyle Parks "was and remains obligated to indemnify Vons against any and all claims 'arising in connection with [the construction contract] . . . .' " According to Vons, the trial court did not rule on whether its cross-complaint was stricken with or without leave to amend, and "Vons may therefore recover its costs." "Any other result would give Lyle Parks an unwarranted windfall in that amount of costs claimed here (among other things) in spite of its duty to hold Vons harmless for them."

Vons also argued that all the deposition costs it claimed were necessary and reasonable, because "[e]ach deponent gave testimony relating to the ownership, water intrusion, damage and repairs at the Center—issues pertinent to Lyle Parks' negligence and the resulting damages." A declaration from Vons's counsel described the various depositions, attached hundreds of pages of deposition transcripts, and reviewed and described invoices for transcripts and reporting services and travel for depositions. Vons also submitted a declaration from Mock's counsel stating that, in his judgment, $35,607.01 in deposition expenses incurred by Mock "was reasonably necessary to the prosecution of the claims against Lyle Parks," and identifying $2,530.26 of transcript expenses that would not have been incurred if Mock had pursued claims only against Lyle Parks. Vons indicated it would "submit an amended memorandum of costs which includes all reasonable costs incurred by Mock," but Vons did not do so. Vons also responded to Lyle Parks's

assertions that certain costs were inexplicable, that others were questionable and unreasonable, and that travel costs were unnecessary.

Lyle Parks's reply countered that Vons's claim for costs was based on the assignment to Vons of Mock's rights pursuant to a settlement, but Vons refused to provide the settlement agreement, so its entire claim for costs was based on inadmissible hearsay and lacked foundation. Lyle Parks also argued that the only costs that could possibly be awarded were those reasonably necessary for the prosecution of the claims on which Vons prevailed: Mock's claims against Lyle Parks. Lyle Parks addressed those costs it contended could not be considered either reasonably necessary or reasonable in amount.

At the hearing on May 7, 2008, the trial court stated that Vons's cost memorandum was not in the court file and, therefore, that the court was "not prepared to hear argument today." The court indicated that Vons could lodge the memorandum, "and then I'll take the matter under submission and issue a ruling down the road." Vons refiled its memorandum of costs later that day.

A week later, the trial court issued its order granting Lyle Parks's motion to strike and tax costs. The court observed that the memorandum of costs "does not specify which of the costs listed therein are attributable to the only action as to which Vons (as 'substitute' plaintiff) prevailed—the trial of Mock's action against Lyle Parks." The court continued: "Tellingly, Vons' Opposition to the Motion to Tax Costs argues that all costs incurred by Vons in this multi-faceted litigation are recoverable, including costs incurred in Vons' prosecution of its dismissed cross-complaint and costs incurred by Vons in defending itself against Mock's claim (before it was settled). Moreover, Vons also seeks to recover Mock's costs, despite the fact that Mock settled prior to trial. But other than to argue that 'Vons was not summarily deprived of its right to recover . . . litigation costs,' Vons provides no persuasive authority for its creative arguments here." The court also stated that there was "no factual support for the claim that Vons is Mock's 'assignee.' " The court observed that "it is not unheard of for a settling party to waive its right to collect costs," and the issue "becomes more complicated because the trial court is entitled to consider whether the 'costs incurred [were] as a result of the actions or tactics of one [party] as opposed to another,' " citing *Nelson v. Anderson* (1999) 72 Cal.App.4th 111, 130 [84 Cal.Rptr.2d 753]. The court concluded that, "based upon Vons' cursory Memorandum of Costs, this Court is unable to determine which party incurred what costs as the result of which other party's actions."

### 2. *Vons's motion for attorney fees.*

On the same day it filed its cost memorandum (Mar. 19, 2008), Vons also filed a motion for attorney fees in the amount of $1,509,364, asserting that

the fees were authorized "by the contract at issue in this case" and that Vons was the prevailing party. Its support for the motion consisted of a declaration from its counsel, Suzanne Rischman. Rischman identified the attorneys from her firm who worked on the case, the hourly rates and number of hours spent, all of which totaled $459,973. She also stated she had spoken with counsel for Mock, and was "informed and believe[d] that the attorneys fees and costs for Mock in this matter totals $1,049,391.00."

Lyle Parks opposed Vons's motion for attorney fees, pointing out that Vons itself (as opposed to Vons as assignee of Mock's claims against Lyle Parks) was not the prevailing party as to any of the litigation, and "any fees to which Vons could possibly be entitled are limited solely to those incurred in Mock's prosecution against Lyle." Because there was "never any contract between Mock and Lyle," there was no attorney fee provision upon which to award fees. Lyle Parks also pointed out that Vons's claim for over $1 million in fees incurred by Mock was supported only by the declaration of Vons's counsel, which was inadmissible hearsay, and Vons made no attempt to distinguish fees earned on the only issue for which Vons obtained a favorable result.

In reply to Lyle Parks's opposition, Vons insisted it was entitled to its own attorney fees, because the construction contract between Lyle Parks and Vons required Lyle Parks to compensate Vons for all of its liabilities and expenses flowing from Lyle Parks's negligence, and "[t]his litigation flows substantially from Lyle Parks' negligence . . . ." As with its cost memorandum, Vons claimed that its fees must be awarded in full "or (at least) Vons must be permitted to pursue them through an amended Cross-Complaint as earlier requested." Further, Vons claimed it was entitled to attorney fees incurred by Mock as Mock's assignee, "up to and through the date Mock and Vons settled," as "[n]othing in the warranty assignment from Vons to Mock, or from Mock back to Vons, worked to separate the warranty from the companion right to attorneys' fees for its enforcement." Vons supported its reply with time records and declarations about the reasonableness of the rates charged, and revised its request downward, seeking attorney fees of $1,147,600: $500,249 for its own fees, and $647,351 in fees incurred by Mock. Vons included a declaration from Mock's counsel stating that Mock's total attorney fees were $840,281.50, and, based on his entry-by-entry review of time records, 23 percent of Mock's attorney fees (or $192,929.75) "would not have been incurred if we had only pursued claims against Lyle Parks in this action."[3]

---

[3] Mock's counsel attributed 20 percent of Mock's fees ($171,442.25) solely to pursuit of its claims against Lyle Parks, and 57 percent of its fees ($475,909.50) to work performed to pursue claims against both Vons and Lyle Parks.

The trial court denied Vons's motion for attorney fees, observing Vons did not assign the construction contract to Mock, but only assigned a warranty that did not contain an attorney fee provision. So, "when . . . Vons stepped into Mock's shoes and sued Lyle on Mock's two causes of action that prevailed to the tune of about $35,000," there was "no attorney fees provision for Vons then to rely on vis-à-vis Lyle."

Vons filed a timely notice of appeal.

## DISCUSSION

Vons challenges the trial court's orders denying costs and attorney fees. We conclude that (1) the trial court was required by statute to award to Vons those costs that were reasonably necessary to the prosecution of Mock's claims against Lyle Parks, and (2) there was no error in the trial court's order denying attorney fees.

> 1. *The trial court erred in granting Lyle Parks's motion to strike Vons's memorandum of costs.*

On appeal, Vons no longer claims it is entitled to all of its own costs, as it contended in the trial court. Instead, it argues the trial court should have awarded "the full $33,671.80 requested, because Vons had understated the amount to which it was entitled for the prosecution of the Mock complaint alone." Vons complains that the court did not hear oral argument on costs, and if Vons had known the court's concerns—i.e., that Vons was entitled only to costs attributable to the trial of Mock's action against Lyle Parks—Vons could have explained "that the amount of costs necessarily incurred in Mock's prosecution of the complaint as against Parks were both provided in the record and unrefuted by Parks." Thus, Vons reasons, its opposition to Lyle Parks's motion to tax costs established, through the declaration of Mock's attorney, that Mock "incurred $35,607.01 in deposition transcript expenses that . . . were related and necessary to the prosecution of the Mock Ranch claims against Parks." Because this was more than the total amount of Vons's own costs as claimed in its cost memorandum ($33,671.80), the trial court erred, Vons says, when it concluded that it could not determine "which party incurred what costs as the result of which other party's actions." We agree the trial court erred, because it could have and should have determined which costs were reasonably necessary to the prosecution of the claims on which Vons, as the assignee of Mock's claims, prevailed at trial.

■ A prevailing party is entitled, as a matter of right, to recover costs (Code Civ. Proc., § 1032, subd. (b)), and Vons was the prevailing party on the claims assigned to it by Mock for negligence and breach of warranty (*id.*, § 1032, subd. (a)(4) [prevailing party includes the party with a net monetary recovery]). Indeed, absent statutory authority, "the court has no discretion to deny costs to the prevailing party." (*Nelson v. Anderson, supra*, 72 Cal.App.4th at p. 129.)

· ■ Vons may have overreached in its memorandum of costs, in seeking all its own pretrial litigation costs, and doing so without regard to whether those costs were reasonably necessary to the prosecution of the claims on which it prevailed.[4] In fact, the costs attributable to the prosecution of Mock's claims against Lyle Parks *can* be determined from the record, based on an analysis of the evidence of Mock's pretrial costs, which Vons submitted in opposition to Lyle Parks's motion to tax costs, and on an assessment of whether those costs were reasonably necessary for the prosecution of the claims against Lyle Parks. In short, although the trial court could not determine a proper cost award "based upon Vons' cursory Memorandum of Costs," it could have, and should have done so based on the arguments and evidence presented by both parties in connection with the motion to tax costs.

Lyle Parks argues that the trial court could properly deny costs "because Vons refused to provide any factual support for its claim that it was the assignee of Mock's right to recover costs." In its order, the trial court observed that "there is no factual support for the claim that Vons is Mock's 'assignee,' " and that "it is not unheard of for a settling party to waive its right to collect costs." We find the court's professed ignorance regarding Vons's status as Mock's assignee curious given the record here, and find that law does not support the court's refusal to award costs.

It is true that Vons did not submit to the court its settlement agreement with Mock, in which Mock's claims were assigned to Vons. But the entire trial was conducted on the basis of the assignment of Mock's claims to Vons: the parties notified the court of the assignment, Mock filed an application to substitute Vons as plaintiff based on the assignment, and the trial court granted that application in a written order. It is thus odd for the trial court to

---

[4] In its memorandum of costs, Vons did not claim Mock's pretrial costs, but sought all the pretrial costs *Vons* incurred in this litigation, without regard to whether the cost was pertinent to its later prosecution of Mock's claims, its own defense against Mock's claims (which were settled) or its own (stricken) claim for indemnification in the cross-complaint. And Vons persisted, in its opposition to Lyle Parks's motion to tax costs, in claiming it was entitled to recover all its own costs (as well as Mock's costs as Mock's assignee), and never amended its memorandum of costs to specify "all reasonable costs incurred by Mock" as it indicated it would do. Instead, it produced the declaration from Mock's counsel on Mock's pretrial costs, as described in the text, *ante.*

state, after trial, that "there is no factual support for the claim that Vons is Mock's 'assignee,' " when the application the court itself granted expressly stated that Mock "assigned and transferred to Vons all of [Mock's] interest in these pending claims and causes of action against Lyle Parks." The court relied on those representations when it proceeded to conduct the trial, and properly so.

■ To the extent the trial court premised its ruling on the absence of any evidence that Mock assigned its right to collect costs for—as opposed to its assignment of "all of [Mock's] interest in"—its causes of action against Lyle Parks, we reject the ruling as a hypertechnicality given that an assignment of a cause of action ordinarily transfers all its incidents. (Civ. Code, § 1084 ["[t]he transfer of a thing transfers also all its incidents, unless expressly excepted . . ."].) Thus the assignment of Mock's causes of action would necessarily include all the incidents of those causes of action, including Mock's right to costs, "unless expressly excepted." (*Ibid.*; see 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 734, p. 817 ["[a]n assignment carries with it all rights of the assignor"].)

The trial court here observed that "it is not unheard of for a settling party to waive its right to collect costs," in essence speculating that perhaps there was a waiver of costs in the Vons/Mock settlement agreement. But waivers of costs generally apply as between settling parties, not as against nonsettling parties. (See *Nelson v. Anderson, supra,* 72 Cal.App.4th at pp. 129–130, 128 [rejecting plaintiff's claim that she had a right to benefit from the cost-waiver provisions of a settlement agreement to which she was not a party; trial court erred when it reduced the prevailing defendant's pretrial costs by two-thirds, based on the fact that defendant had settled with two other plaintiffs, and one of the terms of the settlements was that all parties to the settlement agreed to waive costs].) In fact in the context of a settlement with Vons, it is hard to imagine why Mock would insist upon Vons giving up a right against a third party. In short, the court's speculation that there may have been a waiver of costs in the Vons/Mock settlement agreement, and its apparent conclusion that the assignment of "all of [Mock's] interest in these pending claims"—upon which the entire trial was based—might have excluded Mock's right to the costs to which a prevailing party is entitled by statute, lacks any reasonable basis and does not justify a refusal to award costs.

In sum, Vons was the prevailing party on the claims Mock assigned to Vons. "[T]he prevailing party is entitled to all of his costs unless another statute provides otherwise," and "[a]bsent such statutory authority, the court has no discretion to deny costs to the prevailing party." (*Nelson v. Anderson, supra,* 72 Cal.App.4th at p. 129.) Accordingly, the trial court erred in striking Vons's cost memorandum, and the case must be remanded to the trial court

for purposes of determining what costs were reasonably necessary to the conduct of the litigation—by Mock prior to the assignment and by Vons after the assignment—of Mock's claims for negligence and breach of warranty.

### 2. The trial court did not err in denying Vons's motion for an award of attorney fees.

The trial court denied Vons's motion for attorney fees, concluding that when Vons stepped into Mock's shoes and sued Lyle Parks for negligence and breach of warranty, there was no contractual attorney fee provision as between Mock and Lyle Parks. When Mock purchased the shopping center, Vons assigned Lyle Parks's October 14, 2003 warranty to Mock, but the warranty contained no attorney fee clause, and Vons did *not* assign to Mock the construction contract between Vons and Lyle Parks (which did contain an attorney fee clause).

Vons contends that the trial court erred, because it should have construed Lyle Parks's breach of warranty as "also constituting a breach of the construction contract." Vons relies on Civil Code section 1642, which provides that "[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." (See, e.g., *Nevin v. Salk* (1975) 45 Cal.App.3d 331, 335, 338, 340 [119 Cal.Rptr. 370] [trial court properly concluded that agreement of sale, promissory notes, deed of trust, security agreement and other documents formed a single contract, and fact that agreement of sale contained no attorney fee provision was "of no consequence"; provisions of the notes and security instruments were incorporated in the agreement, and the notes and deed of trust provided for payment of fees, so seller could recover attorney fees in defending buyer's action for fraud affecting seller's security interests].) Thus, Vons contends, the construction contract between Vons and Lyle Parks and the warranty document issued by Lyle Parks upon completion of the project "constitute one contract pursuant to Civil Code section 1642."

We have no quarrel with the principle Vons recites (which was not presented to the trial court),[5] but it is inapposite in this case. It may be that Lyle Parks's breach of its warranty could also have been a breach of the construction contract between Vons and Lyle Parks (which contained its own warranty against defects). But the claims that were tried were not for breach of, or to enforce rights under, the construction contract, which claims were

---

[5] Whether Civil Code section 1642 applies in a particular case is a question of fact for the trial court. (*Brookwood v. Bank of America* (1996) 45 Cal.App.4th 1667, 1675 [53 Cal.Rptr.2d 515].)

not assigned to Mock. Mock was not a party to, and had no rights under, the construction contract, all of which rights were retained by Vons. The only rights assigned by Vons to Mock when Mock purchased the property were expressly specified in the purchase agreement: Vons assigned its "right, title and interest" in the "General Contractor's Warranty Dated October 14, 2003." The record sheds no light on why Vons assigned only the warranty and not the contract, but that is exactly what Vons did. By its express terms, the sale agreement does not assign any contracts, and the later warranty contains no attorney fee clause.

 Vons argues that Mock's claims against Lyle Parks "involve[d]" the construction contract, and therefore the action was "on a contract" within the meaning of Civil Code section 1717, citing *Dell Merk, Inc. v. Franzia* (2005) 132 Cal.App.4th 443, 455 [33 Cal.Rptr.3d 694] ("[a]s long as the action 'involve[s]' a contract it is ' "on [the] contract" ' within the meaning of section 1717"). Although courts "liberally construe" the term "on a contract," *Dell Merk* cannot be read to stand for the proposition that *any* contract in *any* way "involve[d]" in an action renders the suit an action "on the contract."[6] (132 Cal.App.4th at p. 455.) In *Dell Merk*, the bank/assignee which provided financing to a contractor (Dell Merk) sought to enforce its right to payment from the owner (Franzia) under a security agreement with Dell Merk that contained that right (and also contained an attorney fee clause). The bank's action therefore "necessarily involved the security agreement . . . ." (*Id.* at p. 456.) In resolving the bank's claims, the terms of the security agreement and related documents "were necessarily interpreted," and the court accordingly concluded that the bank's claim for repayment "was an action 'on the contract,' the security agreement, within the meaning of section 1717." (*Ibid.*) Because Civil Code section 1717 "provides a reciprocal remedy for a nonsignatory defendant" who is sued on a contract as if he were a party to it, Franzia was entitled to attorney fees for successfully defending against the bank's contractual claim. (132 Cal.App.4th at pp. 455, 456.) Unlike in *Dell Merk*, here there simply was no action "on the [construction] contract." No one sought to enforce the construction contract, and none of its terms was "necessarily interpreted . . . ." (*Id.* at p. 456.)

In sum, we see no error in the trial court's conclusion that, because Vons assigned only Lyle Parks's October 14, 2003 warranty to Mock, and the warranty contained no attorney fee clause, there was no basis for an award of attorney fees under Civil Code section 1717.

---

[6] Civil Code section 1717 provides for an award of attorney fees to the prevailing party "[i]n any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party . . . ." (Civ. Code, § 1717, subd. (a).)

## DISPOSITION

The order denying Vons's motion for attorney fees is affirmed. The order granting Lyle Parks's motion to strike and tax costs is reversed and the cause is remanded to the trial court for a determination of the amount of costs to which Vons is entitled. The parties are to bear their own costs on appeal.

Rubin, Acting P. J., and Flier, J., concurred.