[No. A127596. First Dist., Div. Four. Apr. 12, 2012.]

GEORGE J. MISKE, Plaintiff and Respondent, v.
JAMES C. COXETER, Defendant and Appellant.

[Nos. A127761, A128167. First Dist., Div. Four. Apr. 12, 2012.]

GEORGE J. MISKE, Plaintiff and Respondent, v.
ROBERT H. BISNO et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II.C.

## COUNSEL

Robert H. Bisno, in pro. per., and for Defendants and Appellants Trans-Action Financial Corporation and Trans-Action Commercial Investors, Ltd.

Howard Rice Nemerovski Canady Falk & Rabkin, Jerome B. Falk, Jr., Steven L. Mayer, Noah S. Rosenthal; Jackson DeMarco Tidus & Peckenpaugh, Lawrence R. Resnick, Gregory P. Regier and Yael Tobi for Defendant and Appellant James C. Coxeter.

Law Offices of Robert J. Kahn, Robert J. Kahn; Ferguson & Berland and William S. Berland for Plaintiff and Respondent.

## OPINION

**REARDON, Acting P. J.**—In this fraud in the inducement action against the general partners of a limited partnership, a jury found in favor of respondent George J. Miske, as assignee of a limited partner's fraud claim, and the court entered judgment for $1,408,212.07, including compound prejudgment interest. Following the denial of posttrial motions, the court awarded Miske substantial attorney fees, based on the attorney fee provision in the underlying limited partnership agreement (LPA). Now appellant[1] Coxeter challenges the judgment against him because the jury found that he did not participate in or ratify the fraud perpetrated on a limited partner by his cogeneral partner, appellant Bisno. He relies principally on *Kazanjian v. Rancho Estates, Ltd.* (1991) 235 Cal.App.3d 1621 [1 Cal.Rptr.2d 534] (*Kazanjian*), in which the reviewing court held that an innocent general partner is not personally liable to a limited partner for the wrongdoing of a cogeneral partner. We affirm the judgment against Coxeter, concluding that for purposes of ascertaining his liability for Bisno's wrongdoing under the rule of *Kazanjian*, we treat the defrauded limited partner in question as an innocent third party.

All appellants challenge the award of attorney fees to Miske and the compounding of prejudgment interest. We reverse the attorney fee award

---

[1] Appellants are James C. Coxeter, Robert H. Bisno, Trans-Action Financial Corporation (TAFC), and Trans-Action Commercial Investors, Ltd. (TACI).

because the limited partner's assignment to Miske of its fraud claim did not pass to him any rights under the LPA. And finally, we affirm the compound prejudgment interest award on grounds of estoppel.

## I. BACKGROUND

### A. *Formation of and Investment in Limited Partnerships*

In 1985, appellants James Coxeter, Robert Bisno and TAFC formed two California limited partnerships for the purpose of redeveloping certain property in downtown Berkeley: appellant TACI and Trans-Action Commercial Mortgage Investors, Ltd. (TACMI). Both companies were private placement limited partnerships. Coxeter, Bisno and TAFC were the general partners of the two limited partnerships.

Bisno was responsible for managing the Berkeley project; Coxeter managed projects in Southern California and other parts of the state. Bisno approved the promotional work for the Berkeley project, handled the advertising, flyers and brochures on behalf of the partnerships, and approved and oversaw distribution of a private placement memorandum. As well, Bisno solicited potential investors, took them to the site, gave tours of the property, and made presentations encouraging them to invest.

In early 1986, Bisno transferred $470,000 from TACMI for his personal use to purchase a personal residence, without the knowledge or consent of the other partners.

Then in February and April 1987, Bisno met with Makoto Moriwaki, the president and owner of the Hong Kong company Haldir, Ltd. (Haldir), to discuss the partnerships. Moriwaki traveled each time to Berkeley, and visited the property. Haldir ultimately purchased 44 TACMI limited partnership units for $1,924,560. On April 11, 1987, its managing director executed a subscription agreement. Thereafter, Moriwaki tendered the purchase money. And finally, on April 13, 1987, Bisno, on behalf of the partnership, countersigned the subscription agreement accepting Haldir's subscription and making the company a limited partner.

For a short period of time thereafter, Haldir received distributions totaling $183,389.37 from TACMI, and then the payments stopped. Haldir received new cash flow projections from TACMI that were significantly less than the original projections.

In March 1998, Haldir sold its TACMI limited partnership interest for $198,000 to Berkeley Commercial Center, LLC (Berkeley Center).

In 1996, Dolores Staudenraus, another TACMI limited partner, sued TACMI, Bisno, Coxeter and others for fraud. The general partners of TACMI cross-complained.

Respondent Miske, another TACMI investor, had been instrumental in introducing Moriwaki to the Berkeley project. In 2005 he traveled to Japan to meet with Moriwaki. Miske discussed the misconduct and "bad things that had happened" in the partnership before Haldir invested in the company. After learning of the wrongdoing, Moriwaki, on behalf of Haldir, assigned to Miske all of Haldir's "right, title, and interest in any and all of our claims and causes of action for the monetary losses sustained as a result of the fraud and deceit" of Bisno, Coxeter, TACMI, TACI and TAFC "that induced Haldir . . . to purchase and me to facilitate the purchase by Haldir" of the limited partnership units in TACMI. According to the terms of the assignment, Haldir would receive 75 percent of any net recovery Miske obtained on the assigned claims.

Prior to investing in TACMI, Moriwaki had not been advised of multiple material facts concerning the project, including that (1) the purchase price of a key asset was $1.7 million above its appraised value; (2) contrary to a statement in the promotional materials that the property was acquired with no markup, in fact a $900,000 markup had been added to the price of the property before the seller sold it to TACI and TACMI; and (3) Bisno embezzled $470,000 from TACMI to buy a home.

B. *Litigation and Procedural History*

In late 2005 and early 2006, Miske, on his own behalf and as assignee of Haldir's claim, and other TACMI limited partners separately filed actions against TACMI, TACI, and three of the limited partnerships' general partners: Bisno, Coxeter and TAFC. Each action alleged that plaintiffs had been fraudulently induced to purchase units in TACMI. The court consolidated the three actions, but thereafter ordered that those plaintiffs entitled to trial preference because of age and health issues (the Preference Plaintiffs) would have their claims tried separately, before the claims of the non-Preference Plaintiffs. Miske was not a member of the preferential group.

The jury returned a special verdict in the Preference Plaintiffs' case against all defendants, awarding damages of $251,325 and compound prejudgment interest of more than $1.15 million as of the date of judgment. This court affirmed the judgment in an unpublished opinion. (*Emanuele v. Bisno* (Mar. 13, 2008, A117913).)

After the remittitur issued on the Preference Plaintiffs' claims, defendants settled with all remaining plaintiffs except Miske, as Haldir's assignee. Prior

to trial, Miske asked the court to bar relitigation of certain issues, namely relating to proof of defendants' fraudulent conduct and the propriety of the compound interest award. Ultimately the court ruled in Haldir's favor, and instructed the jury as follows: "You must accept as proven that all defendants made knowing, intentional, and deceptive misrepresentations and conceal-ment in 1986 and 1987 that were material and important; were made with the intent to deceive and induce persons to purchase TACMI limited partnership units; and were made with the intent to have purchasers rely on the misrepresentations." The court also instructed the jury on the liability of a partner: "A limited partnership and each of its general partner[s] is respon-sible for the harm caused by the wrongful conduct of a general partner while acting within the scope of his authority[, e]ven if the other general partners were not aware of it or did not participate in the wrongful conduct. [¶] Robert Bisno's conduct was within the scope of his authority . . . ."

On the issue of compound interest, the court ruled that "[d]efendants are barred from relitigating the plaintiff's entitlement to prejudgment compound interest if plaintiff prevails on his fraud claim at trial. The 'positive miscon-duct' of the defendants is the same in the present case and in the case of the preference plaintiffs whose claims have already been tried."

The jury in the present case returned a special verdict finding that (1) Haldir reasonably relied on a concealment by Bisno that was a substantial factor in causing harm to it; (2) Bisno was acting within the scope of his authority when he concealed a material fact from Haldir; (3) Coxeter did not ratify Bisno's harmful conduct; and (4) the amount of compensatory dam-ages, including compound interest, was $1,408,212.07. The court entered judgment stating the jury returned a special verdict "against all Defendants" and decreed that Miske recover from defendants "jointly and severally."

Thereafter Coxeter moved unsuccessfully for judgment notwithstanding the verdict or, alternatively, to set aside and vacate the judgment and enter a new judgment. Coxeter argued he was an innocent general partner and could not be liable to limited partner Haldir for his cogeneral partner's tortious conduct, citing *Kazanjian*. The trial court disagreed, finding *Kazanjian* distinguishable because "Haldir was an innocent third party for purposes of determining defendant Coxeter's liability for the actions of defendant Robert Bisno."

Miske moved for an award of attorney fees, relying on a provision in the TACMI LPA. Responding to Coxeter's argument that Haldir was not entitled to a fee award because the company prevailed against him based on its status as an "innocent third party" and not as a limited partner, the court ruled that "[o]nce the purchase [of its limited partnership interest] had been made, . . . Haldir was entitled to the benefit of the attorney's fees clause in the

partnership agreement." The court awarded $1,339,025.31 in attorney fees, exclusive of costs. These consolidated appeals followed.

## II. DISCUSSION

### A. *Coxeter's Liability*

■ Coxeter first protests that Miske cannot recover from him because he was found innocent of any wrongdoing. We start with the general proposition that all partners in a partnership are bound by the fraud of a copartner acting within the scope of his or her authority in a partnership transaction with an *innocent third party*, and thus all are responsible for the injury occasioned thereby. (*Stout v. Turney* (1978) 22 Cal.3d 718, 723, fn. 6 [150 Cal.Rptr. 637, 586 P.2d 1228].) Coxeter, however, maintains that because the jury found that *only Bisno* concealed material information from Haldir, Coxeter is an *innocent general partner* and thus cannot be liable to Haldir, a limited partner, for Bisno's tortious acts. From this Coxeter asserts that the court erred in entering a joint and several judgment against him based on the premise that Haldir's fraud claim, asserted by Miske as assignee, was brought in the capacity of a third party rather than a limited partner.

Coxeter centers his argument on *Kazanjian*. There, limited partner Kazanjian sued two general partners for one partner's misappropriation of partnership funds. The other partner was innocent of any wrongdoing, and the wrongdoing occurred well after the limited partner joined the partnership. The matter was referred to a referee for an accounting, and the trial court rendered judgment in accord with the referee's findings. Denying Kazanjian's claim against the innocent general partner, the court ruled that such a partner was not personally liable to a limited partner for damages suffered by acts of the cogeneral partner. (*Kazanjian, supra*, 235 Cal.App.3d at pp. 1624–1625.)

■ Not surprisingly, the question on appeal was whether the innocent general partner was jointly liable to the limited partner for the loss he suffered because of the other partner's malfeasance. The reviewing court concluded he was not, turning to provisions of the Corporations Code law to determine the rights of a limited partner. The court noted that in general, the liability of a general partner to a limited partner is the same as his or her liability to another general partner. (*Kazanjian, supra*, 235 Cal.App.3d at p. 1626.) At the time, the obligations of a misappropriating partner were spelled out in Corporations Code former section 15021, subdivision (1), as follows: "Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners . . . ." (Corp. Code, former § 15021, as added by Stats. 1949, ch. 383, § 1, pp. 674, 680, repealed by Stats. 1996, ch. 1003, § 1.2, p. 5906, eff.

Jan. 1, 1999.) Observing that the misappropriating partner holds profits improperly derived " 'as trustee,' " the court concluded that partnership law thus incorporated the fiduciary concepts of our trust law. (*Kazanjian, supra,* at p. 1626.) Further, at the time of the transactions in question, Civil Code former section 2239 provided: "A trustee is responsible for the wrongful acts of a co-trustee to which he consented, or which, by his negligence, he enabled the latter to commit, but for no others." (Enacted in 1872, repealed by Stats. 1986, ch. 820, § 7, p. 2730.) From this the court concluded that cotrustees and copartners "are not liable for loss caused by misdeeds of their cofiduciaries unless they are personally in some way at fault—either by participating in the tort through consent or otherwise, or by negligence in permitting it to occur." (*Kazanjian, supra,* at p. 1627.)

■ As well, the *Kazanjian* court underscored that a general partner's exposure to liability to a limited partner is not as extensive as a general partner's potential liability to partnership creditors. (*Kazanjian, supra,* 235 Cal.App.3d at p. 1625.) While stressing that a limited partner in the capacity of limited partner is not a creditor, the court was clear that *all* general partners, including innocent general partners, are *jointly and severally liable* to creditors for the tortious acts of a copartner done in connection with, or in the process of, the partnership business. (*Id.* at pp. 1626, 1629.) Further, although like a creditor, a limited partner has no control of the partnership business, the limited partner has made a business decision to relinquish control over business management in return for limiting her liability to her investment. Historically, our limited partnership law was based on two assumptions: First, that public policy did not require limited partners to be responsible for partnership obligations. Second, " 'persons in business should be able, while remaining themselves liable without limit for the obligations contracted in its conduct, to associate with . . . others who contribute to the capital and acquire rights of ownership, provided that such contributors do not compete with creditors for the assets of the partnership.' [Citations.]" (*Id.* at p. 1629, italics omitted.)

The legal question we must resolve is whether to treat Haldir as an innocent third party or an innocent limited partner, for purposes of its assigned fraud in the inducement claim. Haldir's complaint is that it purchased the limited partnership in reasonable reliance on Bisno's representations, which in fact were false and Bisno knew they were false. Had it known the truth about the concealed facts, it would not have purchased the units or become a limited partner. Further, Haldir would not have paid what it did for the units since the units, under the circumstances, had no value. The jury specifically found that Haldir reasonably relied "on a concealment" of Bisno, Haldir's reliance on the concealment was a substantial factor in causing harm to it, and Bisno was acting within the scope of his authority when he made the concealment.

Bisno's tortious concealment occurred *before* Haldir paid money for the units, and induced Haldir to purchase units it later deemed were worthless once it discovered the fraud. The diminishment in value occurred at the moment of purchase, notwithstanding that it was discovered later, after Haldir had become a limited partner. At the moment of purchase, Haldir is in the same shoes as any defrauded innocent third party purchasing a partnership asset. It had not yet retained any benefits from the partnership and had not yet begun operating under the LPA. The only difference at that moment between Haldir and a generic innocent third party who pays more for a partnership asset than it is worth in a transaction wherein material information was concealed, is that Haldir purchased limited partnership units and thereafter became a limited partner.

Coxeter's argument that we must view this through the lens of the innocent general partner analysis is based on the hypertechnical argument that the cause of action for fraud in the inducement did not accrue until Haldir acted in reliance on Bisno's concealment and sustained damages as a result. (See *Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC* (2008) 162 Cal.App.4th 858, 868 [76 Cal.Rptr.3d 325]: elements of action for fraud and deceit based on concealment are (1) the defendant concealed a material fact; (2) the defendant had a duty to disclose the fact to the plaintiff; (3) the defendant intentionally concealed the fact with intent to defraud; (4) the plaintiff was unaware of the fact and would not have acted had she or he had knowledge of the concealed fact; and (5) the plaintiff sustained damages as a result of the concealment.)

 Haldir relied on the flawed representations when it made the decision to purchase the partnership units. That reliance of course continued through the signing of the partnership agreement and payment of money at which precise moment Haldir suffered damages, i.e., the units were worth less than the purchase price (or perhaps nothing). Coxeter's position—that the elements of reliance and injury did not occur until Haldir became a limited partner—exalts form over substance and may be technically true. However, Haldir did not become an innocent limited partner within the meaning of *Kazanjian* at that precise moment. Recall, Kazanjian was not fraudulently induced to buy into the partnership. Rather, he had already purchased his partnership units and had been operating under the LPA for some time when the misappropriation that reduced the assets available at distribution and dissolution occurred. Here, the concealment occurred prior to Haldir's becoming a limited partner, and the value of its units was substantially reduced *at the instant* of going into the partnership. Although it is a fairly close call, we conclude that for purposes of applying the rule of *Kazanjian*, Haldir was an innocent third party, not an innocent limited partner. Therefore, Coxeter was jointly liable for Bisno's concealment of material facts.

B. *Attorney Fees*

1. *Introduction, Background*

Respondent Miske, as assignee of Haldir, received a substantial attorney fee award which appellants now attack. The lower court grounded the fee award in the attorney fee provision of the LPA, which states: "If any dispute arises between the Partners, whether or not resulting in litigation, the prevailing party shall be entitled to recover from the other party all reasonable costs, including, without limitation, reasonable attorneys' fees." Specifically, the court held that Haldir's right to recover attorney fees under the LPA was an incident of the company's fraud claims which it passed to Miske by way of assignment.

■ Code of Civil Procedure section 1021 establishes the basic right to a nonstatutory award of attorney fees, providing that "the measure and mode of compensation of attorneys and counselors at law is left to the agreement . . . of the parties . . . ." This statute allows the parties to agree that the prevailing party in litigation may recover attorney fees, whether the litigation sounds in contract or in tort. (*Xuereb v. Marcus & Millichap, Inc.* (1992) 3 Cal.App.4th 1338, 1341 [5 Cal.Rptr.2d 154].) And, where the language of the agreement broadly applies to " 'any dispute' " under it, the attorney fee clause encompasses any conflict concerning the effect of the agreement, including a tort claim. (*Thompson v. Miller* (2003) 112 Cal.App.4th 327, 337 [4 Cal.Rptr.3d 905].)

The language of the above attorney fee provision is broad enough to cover the type of fraud in inducement claims brought against appellants. Indeed, the Preference Plaintiffs pursued attorney fees under Code of Civil Procedure section 1021 and the partnership agreement, and the court granted the motion in substantial part. Appellants appealed that order but then abandoned the claim.

■ Miske argues that the availability of fees under Code of Civil Procedure section 1021 and the partnership agreement "should be deemed established for purposes of Haldir's claims," maintaining that this case involves the identical agreement and identical claims arising under identical circumstances. Appellants correctly point out that Miske did not assert collateral estoppel in connection with the attorney fees motion. Moreover, his assertion of identical circumstances is incorrect. The identical issue requirement underlying the collateral estoppel doctrine addresses whether identical factual allegations are at stake in the two proceedings, not whether the ultimate issues or dispositions are identical. (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341–342 [272 Cal.Rptr. 767, 795 P.2d 1223].) Here the

Preference Plaintiffs sued in their own names, whereas respondent Miske sued as assignee of Haldir's fraud claims; hence, the issues are not identical and therefore collateral estoppel is not available.

## 2. *Analysis*

█ Civil Code section 1084 declares the law of this state with respect to what passes with an assignment: "The transfer of a thing transfers also all its incidents, unless expressly excepted; but the transfer of an incident to a thing does not transfer the thing itself." Civil Code section 3540 elaborates: "The incident follows the principal, and not the principal the incident." The term "incident" has been defined as a "dependent, subordinate, or consequential part (of something else)"[2] and as "something dependent on or subordinate to something else of greater or principal importance."[3]

What precisely did Haldir assign to Miske? Haldir assigned all "right, title, and interest in any and all of [its] claims and causes of action for the monetary losses sustained as a result of the fraud and deceit" of appellants that induced Haldir to purchase 44 limited partnership units in TACMI. Haldir *did not* assign to Miske the LPA containing the attorney fee clause. Nor did the assignment or the agreement for assignment make any reference to Haldir as a limited partner of TACMI or to the LPA.[4]

█ And finally, Miske was never made a substituted limited partner of TACMI. The LPA defines "Limited Partner[s]" as "persons listed on the signature page as Limited Partners, and any person who becomes a Limited Partner by substitution after receiving an assignment from a Limited Partner with the consent of the General Partners." As well, the LPA specifically prohibited any partner from assigning or selling *any interest* in the partnership or its assets, except upon the approval of the general partners and compliance with other provisions set forth therein. On the other hand, under the LPA a mere "assignee" was someone "who has acquired a beneficial interest in this Partnership from a Limited Partner but who is not a substituted Limited Partner." These definitions are consistent with the former governing

---

[2] Black's Law Dictionary (9th ed. 2009) page 830.

[3] Merriam-Webster's Collegiate Dictionary (11th ed. 2003) page 629.

[4] This may be because in 1998 Haldir sold and assigned to Berkeley Center all of its limited partnership units, receiving in return nearly $200,000 from the purchaser. Pursuant to the operative assignment agreement, Haldir agreed to sell and transfer to Berkeley Center "all right, title and interest in and to" the units, *requested substitution of Berkeley Center as a limited partner of TACMI*, and appointed the purchaser as its proxy and attorney in fact with full power to vote or exercise the powers afforded by the partnership units "in any matter subject to limited partner action." The record does not reveal whether in fact Berkeley Center was made a substituted limited partner of TACMI.

law, in effect at the operative times. In particular, Corporations Code former section 15672 provided that although a limited partnership interest was generally assignable, the assignment of such interest *did not* entitle the assignee to become a partner or exercise the rights of a partner; rather, it entitled the assignee to receive, to the extent assigned, the distributions and allocations to which the assignor would be entitled. (Corp. Code, former § 15672, subd. (a), as amended by Stats. 1994, ch. 1010, § 88, pp. 6068–6069, repealed by Corp. Code, former § 15724, which was repealed by *its own* terms and repealed the entire chapter eff. Jan. 1, 2010 [Stats. 2006, ch. 495, § 18, pp. 3543–3544].) The limited partner remained a limited partner upon assignment of all or part of his or her interest, with the rights the assignee did not acquire or possess, subject to the assignee becoming a limited partner if and to the extent the partnership agreement so provided, or all general partners and a majority in interest of the limited partners consented. (Corp. Code, former §§ 15672, subd. (a), 15674, subd. (a).)

Here, the attorney fee provision itself entitles a prevailing partner to reasonable fees in the event a dispute "arises between the Partners." Written in the present tense, the clause requires a dispute between partners arising during the course of the agreement, which itself is between the general partners and the initial and listed limited partners. From the above chronology and analysis, it is apparent that Miske never stepped into Haldir's shoes as a limited partner with rights under the LPA, including the right to attorney fees in the event of a dispute with a partner. This is so based on one of two possibilities. First, if Berkeley Center became a substituted limited partner as anticipated by the assignment from Haldir of all of its units to the center, then of course Haldir's assignment to Miske of its fraud claims did not confer rights under the LPA because Haldir was no longer a limited partner and could not assign something it no longer owned.

On the other hand, if Haldir maintained its limited partner status after assignment of all its partnership units to Berkeley Center, its assignment to Miske was limited solely to its fraud claims and causes of action. The assignment did not include a separate assignment of the LPA with its attorney fee clause, nor did it mention the LPA or refer to Haldir as a TACMI limited partner, and no action was taken by the TACMI general partners to convert Miske's status from that of assignee to a substituted limited partner entitled to fees under the LPA. Under the terms of the LPA and the governing law at the time, Haldir could not assign any interest in TACMI or TACMI's assets without the consent of the general partners and compliance with other procedures, and thus Miske could not become a substituted limited partner who could then step into Haldir's shoes as a partner and enjoy the benefit of the attorney fee provision in the event of a dispute between partners. Miske would always be only an assignee of Haldir's fraud claims, nothing more.

Citing Civil Code section 1084 and other authority, Miske counters that where an underlying claim has been assigned and the assignor was entitled to recover attorney fees if he or she brought the action directly, the assignee stands in the shoes of the assignor and benefits from the attorney fee provision. This logic is premised on a faulty assumption that the attorney fee provision of the LPA is an incident to Haldir's fraud claims. As we explain, it is not.

First, we do recognize that an assignment of a cause of action ordinarily transfers all its incidents. (Civ. Code, § 1084.) Thus, for example, the statutory right to costs passes to an assignee with the assignment of a cause of action. (*Vons Cos., Inc. v. Lyle Parks Jr., Inc.* (2009) 177 Cal.App.4th 823, 833 [99 Cal.Rptr.3d 562].) And, where an assignor transfers rights to receive and collect moneys due under a settlement agreement that provides for reasonable attorney fees in the event proceedings are undertaken to enforce rights thereunder, the right to such fees is conveyed with the assignment. (*A. J. Industries, Inc. v. Ver Halen* (1977) 75 Cal.App.3d 751, 754, 762 [142 Cal.Rptr. 383] (*Ver Halen*).) Similarly, the assignment from lessors of a claim for four months' rent of certain leased premises carried with it the right to attorney fees where the underlying lease provided for attorney fees in the event of a suit to enforce any rights of lessors. (*Adjustment Corp. v. Marco* (1929) 100 Cal.App. 338, 340–341 [279 P. 1006] (*Marco*).) In both *Ver Halen* and *Marco*, the rights assigned—to receive money due under a settlement agreement and lease respectively—stemmed directly from the underlying agreement affording a right to attorney fees in pursuit of recovery of such moneys. In contrast, the right assigned in this case—Haldir's fraud in the inducement claim against appellants—*did not* stem directly from the LPA and hence the assignment did not confer on Miske the right to attorney fees under the LPA.[5]

Moreover, here the LPA is the "thing" or the "principal" within the meaning of Civil Code sections 1084 and 3540, without which there would be no fraud claims. Stated a little differently, the LPA is not dependent on, or subordinate to, or a consequential part of Haldir's claims for fraud and deceit. Rather, these claims are dependent on, subordinate to and a consequential part of the LPA and the limited partnership units. Since the principal (LPA)

---

[5] Conversely, had Haldir, in its own right as a TACMI limited partner, successfully sued appellants for fraud in the inducement, there is no question that it would have been entitled to attorney fees under the LPA because the triggering prerequisite of a dispute between partners would have been met. (See *Lerner v. Ward* (1993) 13 Cal.App.4th 155, 157, 160–161 [16 Cal.Rptr.2d 486]: fraud in the inducement cause of action arose out of a real estate purchase agreement that contained an attorney fee clause providing for attorney fees to the prevailing party in any proceeding or action arising out of the agreement; the party prevailing on the tort claim was therefore entitled to reasonable attorney fees pursuant to the agreement; see also *Xuereb v. Marcus & Millichap, Inc., supra*, 3 Cal.App.4th at pp. 1340, 1344.)

does not follow the incident (fraud claims), the transfer of the fraud claims does not transfer the LPA. Haldir's rights in that agreement, including rights to attorney fees, had to be separately or specifically assigned.

For all these reasons, we conclude that Haldir's assignment of fraud claims to Miske did not confer any rights under the LPA, and therefore Miske had no claim to attorney fees in this action.

C. *Prejudgment Interest**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## III. DISPOSITION

We reverse the award of attorney fees and in all other respects affirm the judgment. Parties to bear their own costs on appeal.

Rivera, J., and Sepulveda, J.,[†] concurred.

A petition for a rehearing was denied May 3, 2012, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied June 27, 2012, S202704.

---

[*]See footnote, *ante*, page 1249.

[†]Retired Associate Justice of the Court of Appeal, First Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.